# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ULRIKE M. WEST,

        Plaintiff,

vs.                                                                                        No. CIV 09-0631 JB/CEG

NEW MEXICO TAXATION AND REVENUE
DEPARTMENT and PHILLIP SALAZAR,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) the Defendants' Motion for Summary Judgment, filed March 26, 2010 (Doc. 54); (ii) the Plaintiff's Motion for Summary Judgment and Supporting Memorandum, filed March 26, 2010 (Doc. 56); and (iii) Plaintiff's Amended Motion for Summary Judgment Amended Motion [sic], filed June 30, 2010 (Doc. 87). The Court held a hearing on August 30, 2010. The primary issues are: whether Plaintiff Ulrike West exhausted her administrative remedies; (ii) whether West has supported her retaliation claim under the First Amendment of the United States Constitution by presenting evidence establishing that she suffered a materially adverse employment action; (iii) whether West spoke about matters of public concern; and (iv) whether West suffered a materially adverse employment action under the Americans with Disabilities Act, 42 U.S.C. §§ 12201-12213 ("ADA"). The Court grants the Defendants' Motion for Summary Judgment in part, dismissing with prejudice all of West's retaliation claims. Having disposed of all of West's federal claims, the Court remands her remaining state-law claims to the Third Judicial District Court, Dona Ana County, State of New Mexico.

## FACTUAL BACKGROUND

West was a Taxation and Revenue Department ("TRD") employee.  After graduating from NMSU with a degree in accounting, see Defendants' Memorandum in Support of Motion for Summary Judgment at 1, filed March 26, 2010 (Doc. 55)("Defendants' Motion"), on February 8, 1999, TRD hired West as an entry-level tax auditor, and, because of her consistently successful performance ratings, West was promoted to Senior Tax Auditor, see, e.g., Deposition of Janice McGee at 6:1-6 (taken February 22, 2010), filed July 5, 2010 (Doc. 90-1); Defendant New Mexico Taxation and Revenue Department's Answer to Complaint for Civil Rights Violations ¶ 4, at 2, filed July 6, 2009 (Doc. 5); Defendant Phillip Salazar's Answer to Complaint for Civil Rights Violations ¶ 4, at 2, filed July 6, 2009 (Doc. 6).  From 1999 to 2006, Janice McGee was West's Audit Supervisor.  See, e.g., McGee Depo. at 6:10-11; Plaintiff's Memorandum in Support of Her Amended Motion for Summary Judgment ¶ 2, at 2, filed June 30, 2010 (Doc. 88)("Plaintiff's Motion")(setting forth this fact); Defendants' Response ¶ 1, at 4 (admitting this fact).[1]

---

[1] West presents numerous factual assertions and legal arguments based on McGee's testimony, some regarding events that occurred after West assumed the duties of a Auditor Reviewer.  See Plaintiff's Motion ¶¶ 1-11, 14, 17-18, 24, 26-27, 29-30, 35-38, at 2-4, 6-8.  The Defendants argue that McGee's testimony is irrelevant regarding events that occurred when McGee was not West's supervisor, because McGee was not involved in determining whether West's requests for accommodations would be granted or denied, and because the policies changed from the time that McGee was involved in approving West's requests for accommodations.  See Defendant's Response at ¶¶ 1, 3, 7, at 3-4, 6 (citing Plaintiff's Motion ¶¶ 1-12, 16-27, 30-38, at 2-3).

Many of West's factual assertions based on McGee's deposition involve West's employment while McGee was her supervisor.  See Plaintiff's Motion ¶¶ 1-6, at 2.  Moreover, many of the assertions rely on evidence in the record other than McGee's deposition.  See Plaintiff's Motion ¶¶ 15, 16, 19, 20-21,23-26, 29-34, at 4-7.  Because the Defendants do not specifically controvert West's assertions about these facts, the Court considers them admitted.  See D.N.M.LR-Civ.56.1(b)("All material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted.").

While McGee was not personally involved in deciding whether to grant West's requests for

In March 2003, doctors diagnosed West with Relapsing Remitting Multiple Sclerosis ("MS").  See, e.g., Affidavit of Ulrike M. West ¶ 7, at 2 (executed June 30, 2010), filed June 30, 2010 (Doc. 88-1); Plaintiff's Motion ¶ 3, at 2; Defendants' Motion at 1.  West made no secret of her diagnosis, and her supervisors at TRD were aware of her illness.  See, e.g., West Aff. ¶ 7, at 2-3; Defendants' Motion at 1.  When West was initially diagnosed with MS, she made written requests of the Defendants to be exempted from trips out of state and to use of her own vehicle when driving within the state.  See McGee Depo. at 27:22-28:15; Plaintiff's Motion ¶ 4, at 2 (setting forth this fact); Defendants' Response ¶ 1, at 4 (not specifically controverting this fact).  These requests were granted within two weeks without opposition.  See, e.g., McGee Depo. at 28:14-18; id. at 37:14-23; Plaintiff's Motion ¶ 5, at 2 (setting forth this fact); Defendants' Response ¶ 1, at 4 (not specifically controverting this fact).  With the accommodation of being exempted from driving out-of-state and allowed to drive her personal vehicle, West was able "to do her job well."  McGee Depo. at 29:17-20.  See Plaintiff's Motion ¶ 6, at 2 (setting forth this fact); Defendants' Response ¶ 1, at 4 (not specifically controverting this fact).

Before March of 2006, West worked as a field auditor, which required her to travel approximately six weeks a year.  See Deposition of Ulrike West at 54:12-15 (taken December 9, 2009), filed March 26, 2010 (Doc. 55-1).  Because, in part, of the discomfort attendant the travel expected of West and of all field auditors, she was made an Auditor Reviewer in the Audit and

---

accommodation, her familiarity with TRD policies and procedures may assist a factfinder and is probative.  While the Court leaves for the future the decision whether the testimony may come in at trial, the Court will not exclude the testimony at this stage.  The Court notes, however, that much of McGee's testimony is based on hypotheticals that Paul Gayle-Smith, West's attorney, posed, and that many of these hypotheticals are incomplete or misleading.  The Court will decide on a case-by-case basis whether the hypotheticals are so flawed as to render McGee's testimony irrelevant.

Compliance Division of TRD in March 2006. See, e.g., McGee Depo. at 9:6-13; Affidavit of Phillip

Salazar ¶ 3, at 2 (executed March 26, 2010), filed March 26, 2010 (Doc. 55-6); West Depo. at 52:18-

54:11; Defendants' Motion at 1. West worked in Las Cruces, New Mexico, and she was the only

Auditor Reviewer not based in Albuquerque. See, e.g., Salazar Aff. ¶ 3, at 2; West Aff. ¶ 16, at 4;

Defendants' Motion at 1. Heidi Chowning was West's immediate supervisor in West's Auditor

Reviewer role from March 2006 until mid-August 2008, and Laurie Cubbins was West's immediate

supervisor from mid-August 2008 through August 2009. See, e.g., Salazar Aff. ¶ 2, at 1;

Defendants' Motion ¶ 1, at 4. Chowning was located in Albuquerque while she supervised West.

See, e.g., West Depo. at 55:13-56:8; Defendants' Motion at 2.

        As a result of becoming an Auditor Reviewer, West was no longer required to travel to

perform audits. See, e.g., West Depo. at 52:18-53:4; id. at 54:3-11; Defendants' Motion at 1.

Instead, she revised audits that the field auditors from TRD's Las Cruces office performed. See,

e.g., West Depo. at 52:18-53:4; Defendants' Motion at 1. West's only travel requirement as an

Auditor Reviewer was to travel to Albuquerque once or twice a year to attend training sessions or

group meetings of the Auditor Reviewers. See, e.g., Salazar Aff. ¶ 9, at 4; West Depo. at 55:13-20;

Defendants' Motion at 1-2.

        **1.      Events Relating to West's Previously Settled Disability Discrimination Claim.**

        On approximately March 13, 2007, West requested ergonomic office furniture to

accommodate her MS. See, e.g., Charge of Discrimination (dated December 11, 2007), filed July

5, 2010 (Doc 90-5); Plaintiff's Motion ¶ 12, at 3 (setting forth this fact); Defendants' Response ¶

2, at 4 (not specifically controverting this fact). The furniture West requested was identical to

furniture that TRD provided to other employees, none of whom is believed to have made an

accommodation request or to have been disabled.  Plaintiff's Amended Response to Defendants' First Set of Interrogatories No. 2, at 3, filed July 17, 2010 (Doc. 96-7)("Plaintiff's Interrogatories Answers"); Plaintiff's Motion ¶ 11, at 5 (setting forth this fact); Defendants' Response ¶ 2, at 4 (not specifically controverting this fact).  On approximately July 3, 2007, the Defendants conducted an ergonomic study of West's workstation.  See Salazar Aff. ¶ 5, at 2.  On October 3, 2007, West sent an electronic mail to Mary Keener Beresford, Director of the New Mexico Governor's Commission of Disability, asking for clarification on the proper procedure for requesting an accommodation and expressing her frustration over the Defendants' response to her request for furniture.  See Electronic Mail from Ulrike West to Mary Keener Beresford (dated October 2, 2007), filed July 5, 2010 (Doc 90-2); West Aff. ¶ 7, at 3.  On September 12, 2007, TRD ordered West a chair.  See, e.g., McGee Depo. at 92:20-22; Plaintiff's Motion ¶ 14, at 4 (setting forth this fact); Defendants' Response ¶ 2, at 4 (not specifically controverting this fact).  On November 15, 2007, West sent an electronic mail to Lynette Trujillo, Human Resources Bureau Chief, and Patricia Jauregui, Human Resources Supervisor, stating: "I hope you can understand that I am running out of patience and that I will take this to the next step if necessary."  Plaintiff's Interrogatories Answers No. 3, at 7.  See Plaintiff's Motion ¶ 19, at 5 (setting forth this fact); Defendants' Response ¶ 3, at 4-5 (not specifically controverting this fact).  Jauregui was concerned about West's complaints of discrimination.  See, e.g., Jauregui Depo. at 31:25-32:1; Plaintiff's Response ¶ 3, at 8.[2]  On November 16, 2007, West

---

[2] West alleges Jauregui and Chowning "were concerned and angered by Plaintiff's complaints of discrimination."  Plaintiff's Response ¶ 3, at 8.  The Defendants respond that no evidence supports West's contention about Chowning and "Juaregui's testimony reflects that she was 'concerned.'"  Reply in Support of their Motion for Summary Judgment and Memorandum of Law in Support Thereof  at 6-7, filed July 30, 2010 (Doc. 99)("Defendants' Reply").  West offers no support for her allegation about Chowning, and the Court's review of the record reveals none.  Moreover, West does not accurately characterize Jauregui's statements.  See Plaintiff's Response

sent an electronic mail to Chowning stating: "And just so you know, I do feel discriminated against; not from you personally, but from the Department."  Plaintiff's Interrogatories Answers No. 3, at 7.  See Plaintiff's Motion ¶ 20, at 5 (setting forth this fact); Defendants' Response ¶ 3, at 4-5 (not specifically controverting this fact).

West filed a Charge of Discrimination (453-2008-00310) with the Equal Employment Opportunity Commission ("EEOC") on December 11, 2007, complaining that her request for ergonomic office furniture remained unfulfilled.  See Doc. 90-5.  TRD received the EEOC Charge at the end of December 2007.  See, e.g., Plaintiff's Interrogatories Answers No. 2, at 3-4; Plaintiff's Motion ¶ 23, at 5 (setting forth this fact); Defendants' Response ¶ 3, at 4-5 (not specifically controverting this fact).  In January 2008, Chowning forgot to approve West's request for leave, forward information to her, and to call her for meetings, which Chowning had not done previously.  See, e.g., Plaintiff's Interrogatories Answers No. 2, at 3; Plaintiff's Motion ¶ 22, at 5 (setting forth this fact); Defendants' Response ¶ 4, at 5 (not specifically controverting this fact).[3]  On October 2,

---

¶ 3, at 8 (citing Jauregui Depo. at 28:22-29:1-15; id. at 31:17-32:8).  Mr. Gayle-Smith asked Jauregui: "[w]hen you received Ms. West's complaint in October of 2007, were you concerned then?"  Jauregui Depo. at 31:25-32:1.  She replied: "I can't say. I don't remember that long ago," before stating that employee complaints usually cause her to feel concerned. Jauregui Depo. at 32:2-13. She never stated that she was angered by West's complaint.  Because West does not accurately characterize the record, and her proposed fact that Jauregui was angered and that Chowning was angered and concerned lack evidentiary support, the Court rejects those proposed facts.  The Defendants' admit that Jauregui's testimony reflects that she was concerned.  Defendants' Reply at 6-7.

[3] The Defendants do not specifically controvert that Chowning forgot to call West for meetings, forward calls to her, or approve her request for leave.  See Defendants' Response ¶ 4, at 5.  The Defendants do argue that the facts do not support "read[ing] retaliatory notice into Ms. Chowning's single e-messages apologizing for forgetting to approve leave."  Defendants' Response ¶ 4, at 5.  Because West retaliation claims fail on other grounds, the Court does not reach this question.

2008, the EEOC determined that there was reasonable cause to believe TRD discriminated against West. See, e.g., EEOC Determination at 1 (dated October 2, 2008), filed July 5, 2010 (Doc. 90-7); Plaintiff's Motion ¶ 31, at 7 (setting forth this fact); Defendants' Response ¶ 7, at 6 (not specifically controverting this fact). After the EEOC's conciliation efforts proved unavailing, the United States and TRD reached a settlement agreement regarding West's failure-to-accommodate claim based on TRD not providing her ergonomic office furniture. See Settlement Agreement Between The United States of America and the New Mexico Taxation and Revenue Department under the Americans with Disabilities Act DJ #205-49-22, filed July 5, 2010 (Doc. 90-9)("Settlement Agreement"). In accordance with the Settlement Agreement, West released all of her claims against TRD. See Settlement Agreement at 2. The substance of West's failure-to-accommodate claim in that EEOC charge is not the subject of this suit and is not before the Court, but West argues that the Defendants retaliated against her on the basis of these prior claims.[4] See Plaintiff's Interrogatories Answers Nos. 2-3, at 3-8.

---

[4] The Defendants argue that West "rehashes the factual bases underlying her settled claim with the Department of Justice." Defendants' Motion ¶ 2, at 4 (citing Plaintiff's Motion ¶¶ 12-15, at 3-4). The Defendants assert that West's retaliation claim is not based on her request for furniture, nor could it be, because West fully adjudicated and concluded her claims, and the evidence of the settlement is inadmissible to prove liability. Defendants' Motion ¶ 2, at 4. Under rule 408 of the Federal Rules of Evidence, "[e]vidence of the following is not admissible on behalf of any party, when offered to prove liability for . . . a claim that was disputed . . . conduct or statements made in compromise negotiations regarding the claim . . . ." Fed. R. Evid. 408(a)(2). The Defendants are correct that the substance of West's failure-to-accommodate claim is not the subject of this suit and cannot be the basis of liability, because West has dismissed that claim under the Settlement Agreement. The EEOC charge based on that claim, whoever, relates to West's retaliation claims, because she argues that the EEOC charge was the protected event for which the Defendants retaliated against her. Thus, because the EEOC charge is related to a permitted use under rule 408(b), the Court will consider evidence of West's prior failure-to-accommodate for the limited purpose of understanding her prior protected activity. See Hamilton v. Water Whole Intern. Corp., 320 F. App'x 789, 797 (10th Cir. 2008)("While settlements may not be introduced to prove liability, evidence of such settlements is admissible under Rule 408 for other purposes.").

2.      **Events Relating to West's Request to Drive Her Personal Vehicle and Be Reimbursed for Milage.**

In 2007, to curtail liability and to reduce costs by requiring employees use TRD's fleet vehicles, TRD adopted a new policy prohibiting milage reimbursement for driving personal vehicles. See, e.g., McGee Depo. at 30:4-12; Salazar Aff. ¶ 8, at 3; Defendants' Motion at 2.[5] Even under the new policy, West could drive her personal vehicle provided that she showed a valid driver's license, proof of insurance, and agreed not to be reimbursed for mileage. See, e.g., McGee Depo. at 30:4-12; Salazar Aff. ¶ 8, at 3; Plaintiff's Motion ¶ 7, at 3 (setting forth this fact); Defendants' Motion at 2 (setting forth this fact).

On October 11, 2007, West made a request for an accommodation "to drive [her] private vehicle and to receive mileage reimbursement when required to travel to locations outside of Las Cruces, NM." TRD Reasonable Accommodation Request Form at 4 (dated October 11, 2007), filed March 26, 2010 (Doc. 55-5)("Milage Reimbursement Request").[6] See Affidavit of Patricia Juaregui

_____

[5] McGee testified that she is unaware of the justification for the change in policy. See McGee Depo. at 30:24-31:4. Based on this statement, West argues that "Defendants never provided any justification for the change in its driving policy." Plaintiff's Motion ¶ 8, at 3. McGee's lack of awareness does not support West's assertion, and the Defendants have provided a justification through Salazar's affidavit. Consequently, the Court does not accept as accurate West's contention that no justification was offered.

[6] West makes a series of objections to the Defendants' statement of undisputed material facts ("DUMF"). See Plaintiff's Response at 4-7. In the Milage Reimbursement Request, West wrote:"I request the accommodation to drive my private vehicle and to receive mileage reimbursement when required to travel to locations outside of Las Cruces, NM." The DUMF states: "West made a request for an accommodation that she be reimbursed for mileage incurred while traveling in her personal vehicle." Defendants' Motion ¶ 2, at 4. West objects that the statement: "Plaintiff made a request to be reimbursed for mileage" is "misleading," because "Plaintiff made a request for a reasonable accommodation of her disability (which would ordinarily include mileage reimbursement.) [sic] under the ADA." Plaintiff's Response ¶ 2, at 5 (citations omitted). She further contends that the Defendants "demanded that Plaintiff negotiate additional, harassing bureaucratic hurdles just to obtain an accommodation to which she was legally entitled and which she had previously been

-8-

¶ 2, at 1 (executed March 26, 2010), filed March 26, 2010 (Doc. 55-5); Defendants' Motion ¶ 2, at 4 ("On October 11, 2007 West made a request for an accommodation that she be reimbursed for mileage incurred while traveling in her personal vehicle."); Plaintiff's Motion ¶ 16, at 4 ("Plaintiff made an ADA request for permission to drive her own vehicle on business trips").  West wrote:

> My MS mainly impairs the right side of my body, but when driving a car, it affects greatly my lower back, my neck, and my shoulders.  Prolonged sitting in uncomfortable or low seats results in excruciating pain and impairing fatigue.  My private vehicle was purchased to fit my body and it has appropriate adjustment functions to largely avoid pain and fatigue.

Milage Reimbursement Request at 4.  On October 18, 2007, Trujillo sent a letter to Dr. Teresa Gomez,[7] West's health care provider, asking Dr. Gomez to complete an Americans with Disabilities Act ("ADA") Physician's Statement form.  See, e.g., Letter from Lynette Trujillo to Teresa Gomez at 6 (dated October 18, 2007), filed March 26, 2010 (Doc. 55-5); Juaregui Aff. ¶ 3, at 1.

---

provided."  Plaintiff's Motion ¶ 17, at 4.  West is evidently somewhat confused what purpose her opposition to the DUMF serves.  Her opposition to the DUMF is not the place for legal argument, rather, it is the place to specifically controvert the substance of the Defendants' factual assertions. D.N.M.LR-Civ.56.1(b) states:

> A memorandum in opposition to the motion must contain a concise statement of the material facts as to which the party contends a genuine issue does exist.  Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the opposing party relies, and must state the number of the movant's fact that is disputed.  All material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted.

Because West "failed to 'specifically controvert' defendants' statements of facts with denials or counter-statements that fairly met the substance of defendants' statements . . . [and] intermixed [his] responses . . . with legal arguments and asserted inferences to be drawn from the facts," Mitchael v. Intracorp, Inc., 179 F.3d 847, 856 (10th Cir. 1999), the Court considers the fact that West requested milage reimbursement admitted.

    [7] Dr. Gomez was formerly known as Dr. Reyes and changed her name during the relevant time period.  To avoid confusion, the Court will refer to her only as Dr. Gomez.

On January 31, 2008, Dr. Gomez returned the ADA Physician's Statement with facially contradictory information, stating that West could not travel long distances with or without accommodation, but that she could travel long distances.[8]  See, e.g., Juaregui Aff. ¶ 4, at 2; West Depo. at 176:6-8; Defendant's Motion ¶ 3, at 4.  In response to the prompt, "[l]ist the essential job function(s) the employee/applicant is unable to perform, with or without a reasonable accommodation," Dr. Gomez wrote, "[t]raveling long distances."  Completed ADA Physician's Statement at 10, filed March 26, 2010 (Doc. 55-5).  In response to the next prompt, "[l]ist the essential job function(s) the employee/applicant is able to perform with a reasonable accommodation, and for each function you list, specify the accommodation(s) you recommend to enable the employee/applicant to perform the function," Dr. Gomez wrote "[t]raveling long distances -- patient may use her personal vehicle."  Completed ADA Physician's Statement at 10.[9]

––––––––––––––––––––

[8] West argues that "Plaintiff's physician correctly filled out a form provided by Defendants." Plaintiff's Response ¶ 3, at 5.  West concedes, however, that the form was facially contradictory. See West Depo. at 176:6-8 ("[Ms. Maynes]: Can you see that those statements might be viewed by some people as contradictory? [Ms. West]: Yes.").  Consequently, the Court considers the fact admitted.

[9] Mr. Gayle-Smith asked at the deposition of McGee, who was not involved in deciding whether to grant West's milage reimbursement request, the following:

> [Mr. Gayle-Smith:] If after, even after the new rule came in with regard to driving, if someone came to you and said well, you know I have MS and I have a doctor's note saying that I can't drive and the same note says that I can drive my own vehicle, would you see anything wrong with that medical recommendation which stated --
>
> [McGee]: I wouldn't see anything wrong with it but I wouldn't have the authority to approve it.

McGee Depo. at 31:18-25.  Based on this answer, West alleges: "McGee stated that a doctor's note stating that Plaintiff could not drive without accommodation but could drive her own vehicle did not require further clarification."  Plaintiff's Motion ¶ 9, at 3 (citing (McGee Depo. McGee Depo. at 31:5-31).  The Defendants argue that McGee's testimony

One day later, on February 1, 2008, TRD wrote to Dr. Gomez, copying West, seeking clarification of the contradictory information in the ADA Physician's Statement.  See, e.g., Letter from Patricia Jauregui to Teresa Gomez at 12 (dated February 1, 2008), filed March 26, 2010 (Doc. 55-5); Jauregui Aff. ¶ 5, at 2; Plaintiff's Motion ¶ 24, at 6 (setting forth this fact).  The letter stated: "Your statement indicates that [West] can not travel long distances.  It goes on further to say that she can travel long distances using her own vehicle.  Can you provide clarification to your statement?"  Letter from Patricia Jauregui to Teresa Gomez at 12.

Having received no further information from Dr. Gomez or West, on March 10, 2008, TRD contacted West and informed her that her physician had not yet responded and that TRD would attempt to contact her doctor's office again.  See, e.g., Jauregui Aff. ¶ 7, at 2; Defendants' Motion ¶ 4, at 4.  TRD left three separate messages for Dr. Gomez on March 10, March 14, and March 25, 2008.  See, e.g., Jauregui Aff. ¶ 7, at 2; Defendants' Motion ¶ 4, at 4.  TRD then sent West a letter on March 27, 2008, asking her to provide supplemental clarifying information regarding her milage reimbursement request by April 8, 2008.  See, e.g., Letter from Patricia Juaregui to Ulrike West at 13 (dated March 27, 2008), filed March 26, 2010 (Doc. 55-5); Jauregui Aff. ¶ 8, at 2; Plaintiff's Motion ¶ 25, at 6.  On April 2, 2008 West provided supplemental clarifying information from her

is irrelevant. Defendants' Response ¶ 1, at 4. First, West's allegation mischaracterizes what McGee stated.  McGee was not asked about a note stating that West could not drive "without accommodation," and she did not state that such a note "did not require further clarification," but that she did not "see anything wrong with it" but would not have the authority to approve the request. McGee Depo. at 31:18-25.  Second, the Completed ADA Physician's Statement states that West could travel long distances "with or without a reasonable accommodation," so the hypothetical that Mr. Gayle-Smith presented to McGee failed to capture the heart of what makes Dr. Gomez' note contradictory.  Finally, West conceded that the note is contradictory. See West Depo. at 176:6-8.  Consequently, the Court concludes that McGee's comment is immaterial.

medical provider, stating:

> Ms. Ulrike M. West is able to travel long distance in a vehicle which is able to provide accommodations for her disabilities.  She also needs to be able to take stretch breaks at regular intervals.  Recommendations for reasonable accommodations are as follows:
>
> > a) Use of personal vehicle (GMC Suburban -- Regency Conversion), which is equipped with electronically fully adjustable bucket front seats; adjustable distance, heights, angle, backrest, and lumbar support; which provides Ms. West the necessary support for her legs and her spine to reduce the exacerbation of her symptoms.  The vehicle also has the correct heights to allow Ms. West to enter and exit the vehicle with the least amount of effort and pain.  Or
> >
> > b) Ensure the availability of a properly equipped State vehicle of the correct heights with electronic adjustability function as described for her personal vehicle under a).  Or
> >
> > c) Provide a comfortable vehicle and a driver for Ms. West for long distance travel.

Additional Clarification to the ADA Physician's Statement for Ulrike M. West Requested by the Human Resources Bureau of the New Mexico Taxation and Revenue Department in a Letter Dated March 27, 2008, at 15 (dated April 2, 2008), filed March 26, 2010 (Doc. 55-5)("Additional Clarification").  See Defendants' Motion ¶ 4, at 4.

Thus, through no fault on the part of TRD, the additional clarifying information TRD sought from West's health care provider was not ascertained until April 2, 2008.  Defendants' Motion ¶ 4, at 4.[10]  On April 3, 2008, West filed her Charge of Discrimination (453-2008-00868) with the EEOC

---

[10] The Defendants assert that "Through no fault on the part of TRD, the information was not provided until April 2008."  Defendants' Motion ¶ 4, at 4 (citations omitted).  West responds that "Defendants never received any 'additional information' from Plaintiff's physicians."  Plaintiff's Response ¶ 4, at 5.  TRD received, however, information from West's physician in the Additional Clarification.  West further argues: "Nor was there any need for any 'additional information.'  The doctor merely repeated what Plaintiff and physician had already stated in the application."  Plaintiff's Response ¶ 4, at 5 (citations omitted).  First, West mischaracterizes the Defendants' factual allegation, which states "the information was not provided until April 2008," and not "some

in which she alleged, in part, that the Defendants had harassed and retaliated against her on March 27, 2008, because of her earlier charge of discrimination (453-2008-00310).  See Charge of Discrimination (dated April 3, 2008), filed July 5, 2007 (Doc. 90-2)("EEOC Charge"); Plaintiff's Motion ¶ 26, at 6 (setting forth this fact); Defendants' Response ¶ (not specifically controverting this fact).

> On April 8, 2008, Juaregui wrote to West:
>
> It appears as though traveling is sporadic and may only happen once or twice a year. Therefore, the accommodation should be handled through your supervisor on a case by case basis depending on the situation either by allowing you to take your private vehicle or by allowing you to ride with someone to the destination.  Both of these were recommendations made by your physician.

Letter from Patricia Juaregui to Ulrike West at 16 (dated April 8, 2008), filed March 26, 2010 (Doc. 55-5).  See, e.g., Juaregui Aff. ¶¶ 12-13, at 3; Salazar Aff. ¶ 9, 3-4; West Depo. at 108:4-7.[11]

─────────────────────

requested and necessary 'additional information' regarding the request for a driving accommodation was not received until April 2008."  Plaintiff's Response ¶ 4, at 5.  Second, the Additional Clarification provided new information, because West's original Reasonable Accommodation Request Form and the Completed ADA Physician's Statement did not state specifically how West's Suburban had been equipped to accommodate her MS, that a properly equipped TRD fleet vehicle or a driver and a comfortable vehicle could accommodate West's MS.  Accordingly, the Court rejects West's argument and treats the fact as admitted.

[11] The parties disagree on how to characterize TRD's decision.  See Defendants' Motion ¶ 5, at 4 ("TRD advised West that she would be permitted to use her personal vehicle on a case-by-case basis, acknowledging that she did not perform much work related travel in her overseer position."); Plaintiff's Motion ¶ 25, at 8 ("Defendants denied Plaintiff's request to drive her own ergonomic vehicle on work-related journeys.").  In West's opposition to the DUMF, she argues that "'[g]ranting' a reasonable accommodation on a 'case by case basis' is a contradiction in terms."  Response ¶ 5, at 6.  West again fails to understand the role of her opposition to the DUMF, by bringing a legal argument to a fact fight.  Because West fails to "'specifically controvert' defendants' statements of facts with denials or counter-statements that fairly met the substance of defendants' statements . . . [and] intermixed [his] responses . . . with legal arguments and asserted inferences to be drawn from the facts," Mitchael v. Intracorp, Inc., 179 F.3d at 856, the Court treats the Defendant's assertion of fact as admitted, see D.N.M.LR-Civ.56.1(b).  The Court, however, will consider West's argument that a case-by-case grant of a reasonable accommodation is a denial when

McGee testified that, in her opinion, she does not believe the amount of travel required of an employee makes a difference in whether they are granted an accommodation.  See, e.g., McGee Depo. at 5-10; Plaintiff's Motion ¶ 11, at 3 (setting forth this fact); Defendants' Response ¶ 1, at 4 (not specifically controverting this fact).

West did not miss any work related travel while the Defendants were awaiting the additional information from West's physician.  See, e.g., Salazar Aff. ¶ 10, at 4; Defendants' Answers to Plaintiff's First Set of Interrogatories and Requests for Production No. 3, at 4, filed July 17, 2010 (Doc. 96-6); Defendants' Response ¶ 5, at 6.  After TRD informed West that they would review her travel requests on a case-by-case basis, West did not travel again before leaving TRD.  See Defendant's Reply ¶ 5, at 3.

### 3.    Events Relating to West's Request for a Part-Time Schedule.

In July 2008, West made another request for an accommodation.  On July 29, 2008, West requested that her permanent full-time position be converted to a permanent, part-time position, and that she work only five hours a day for five days a week.  See, e.g., TRD Reasonable Accommodation Request/Medical Release Form at 1 (dated July 24, 2008), filed July 30, 2010 (Doc. 99-1)("Part-Time Schedule Request"); Salazar Aff. ¶ 11, at 4; Defendants' Motion ¶ 6, at 5.  She requested that she be given additional leave without pay of twenty hours per week for an "undetermined length of time, due to [her] inability to perform [her] job duties for longer than 20 hours per week."  Part-Time Schedule Request at 1.  See, e.g., Defendants' Motion ¶ 6, at 5 (setting forth this fact); Plaintiff's Response ¶ 6, at 6 (admitting this fact).  She explained that she could

---

it consider's West's legal arguments.

-14-

"only work as a tax audit reviewer for an absolute maximum of five hours per day with a Monday

through Thursday schedule."  Part-Time Schedule Request at 1.  See, e.g., Plaintiff's Motion ¶ 28,

at 6 (setting forth this fact); Defendants' Response ¶ 6, at 6 (not specifically controverting this fact).

West requested that TRD provide this schedule until she was "rehabilitated for another job or until

[she] resign[ed] from this position, whichever c[ame] first."  Part-Time Schedule Request at 2.[12]  At

the time that West made her second request, she had been permitted to work a twenty-hour week,

part-time schedule for approximately six months on orders from her worker's compensation medical

provider after filing a workers compensation claim on October 25, 2007.  See Complaint ¶ 20, at 4

(setting forth this fact); Defendants' Motion ¶ 7, at 5 (setting forth this fact).

        West's request for a part-time schedule went to the Director of the Audit and Compliance

Division, Philip Salazar, for determination.  After Salazar received West's request to have her

position converted to a permanent part-time position, he considered the operational needs of the

_____

        [12] The Defendants assert that this request is one that West's "permanent full-time position
be converted to a permanent part-time position and she only works five hours a day for five days a
week."  Defendants' Motion ¶ 6, at 5.  West responds that "Plaintiff never asked for a part-time
position[;] [r]ather she requested that she be given additional leave of 20 hours on a temporary basis
because she was running out of her own leave."  Plaintiff's Response ¶ 6, at 6.  On the record before
the Court, working part-time and being granted an additional twenty hours leave without pay per
week appears to be a distinction without a difference.  The parties have not explained how there is a
substantive difference, if any, between requesting a part-time schedule and requesting to work
twenty fewer hours a week.  Morever, West requested "20 hours of leave without pay per week,"
Part-Time Schedule Request at 1, and the Defendants offered her a twenty-hour-a-week schedule
with "[t]he remaining normally scheduled hours will be coded LWOP [(leave without pay)]."  Letter
from Salazar to West at 12 (dated September 15, 2008), filed July 17, 2010 (Doc. 96-4).  The Court
also concludes that West's request was not for a temporary change, but for an "undetermined length
of time" -- "until she was "rehabilitated for another job or until [she] resign[ed] from this position,
whichever c[ame] first."  Part-Time Schedule Request at 2.  Part-Time Schedule Request at 2.  Thus,
West attacks the semantics, not the substance, of Defendants' factual assertion, failing to controvert
the evidence the Defendants put forward.  See D.N.M.LR-Civ.56.1(b).  Consequently, the Court
treats the Defendants' assertion of fact as admitted.

Agency for Auditor Reviewers to review the audits that field auditors prepare.  See, e.g., Salazar Aff. ¶¶ 11-13, at 4; Defendants' Motion ¶ 8, at 5.  Salazar could not justify converting a full-time permanent position to a permanent part-time position because of the operational needs of the agency for a full-time Auditor Reviewer.  See, e.g., Salazar Aff. ¶¶ 11-13, at 4; Defendants' Motion ¶ 8, at 5.  He decided that TRD could not afford to lose a full-time position by granting her request.  See, e.g., Salazar Aff. ¶¶ 11-13, at 4; Defendants' Motion ¶ 8, at 5.  Salazar concluded that granting West's request would place an undue burden upon the remaining Auditor Reviewers and, in the financial climate that TRD faced in 2009, it would be very difficult to recover a full-time Auditor Reviewer position if TRD were to relinquish West's full-time position to permanent part-time status.  See, e.g., Salazar Aff. ¶¶ 12-13, at 4; Defendants' Motion ¶ 8, at 5.[13]

---

[13] Mr. Gayle-Smith asserts:

> McGee stated that she did not even know what an FTE was and even though she may have heard of an FTE she did not remember ever receiving any training on the subject or on the subject of the budget being considered in connection with the processing of a request for a reasonable accommodation.

Plaintiff's Motion ¶ 22, at 12 (citing McGee Depo. at 20:6-20).  First, McGee was not involved in reviewing West's request for a part-time schedule.  Second, West again mischaracterizes the evidence in the record.  Mr. Gayle-Smith had the following exchange with McGee:

> [Mr. Gayle-Smith]: Now at any time after that new supervisor training in 1998, do you remember receiving training about FTEs?
>
> [McGee]: FTEs.
>
> [Mr. Gayle-Smith]: Do you know what an FTE is?
>
> [McGee]: No, what's an FTE?
>
> [Mr. Gayle-Smith]: Okay.
>
> [McGee]: Well, maybe if you tell me what it is.

Salazar wrote West on September 15, 2008, informing her that her requested part-time schedule "does not result in [her] being able to perform the essential functions of the job and is therefore denied as an accommodation,"[14] but offering her a temporary three-month part-time schedule, at the end of which West's part-time status might be renewed depending on "critical operational needs of the department and information provided by [West] through [her] physician regarding [her] continued need to be on an abbreviated schedule."  Letter from Salazar to West at 12 (dated September 15, 2008).  See, e.g., Salazar Aff. ¶ 16, at 4; West Depo. at 108-113; Defendants' Motion ¶ 9, at 5 (setting forth this fact); Plaintiff's Response ¶ 9, at 6 (admitting this

---

[Mr. Gayle-Smith]: Okay. If I told you that it's an acronym that has been used by Ms. Maynes, so at least by the Department in their responses to some of Ms. West's questions and that it probably means full-time equivalent or something like that, does that sound familiar?

[McGee]: Oh, okay. I've heard it, I've heard of it, yes.

[Mr. Gayle-Smith]: Okay, you've heard of that, okay.

[McGee]: I've heard the acronym.  I mean I've heard, when you said that I understand that I've heard that word before.

[Mr. Gayle-Smith]: Okay. At any time did you receive any training that used that word or that acronym, FTE?

[McGee]: I don't remember.

McGee Depo. at 20:6-20 (emphasis added).  McGee states that she has heard the term FTE.  More importantly, McGee does not state that she has never been trained "on the subject of the budget being considered in connection with the processing of a request for a reasonable accommodation." Consequently, the Court does not admit the fact asserted by West.

[14] McGee testified that it made sense that two employees could share one full-time position, but that the job of an auditor "could not be shared."  McGee Depo. at 70: 21-72:6.

fact); Plaintiff's Motion ¶ 29, at 7 (setting forth this fact).[15]

Within three weeks of being notified of Salazar's decision, West's treating physician determined that she could no longer hold gainful employment.  See Physician Form (October 6, 2008), filed March 26, 2010 (Doc. 55-4).  On October 8, 2008, her treating physician, who wrote that her MS condition precluded "gainful employment," advised West not to work at all.  Physician Form.  She left work after that note and never returned.  See Defendants' Motion ¶ 11, at 6 (setting forth this fact); Plaintiff's Response ¶ 11, at 7 (admitting West "became unable to work in the foreseeable future").

## PROCEDURAL BACKGROUND

West filed her Complaint in the Third Judicial District Court, Dona Ana County, New Mexico as No. CV-2009-834 on April 2, 2009.  See Complaint for Civil Rights Violations, Exhibit to Notice of Removal, filed June 26, 2009 (Doc. 1)("Complaint").  West completed service of process on the Defendants on June 15, 2009, and on June 26, 2009 the Defendants removed the case to the United States District Court for the District of New Mexico.  See Notice of Removal, filed June 26, 2009 (Doc. 1).

---

[15] The parities dispute whether Salazar's decision to deny West's request to convert her job to a permanent part-time job was motivated by unlawful retaliation for her having filed a charge of disability discrimination in December of 2007.  See Defendant' Motion ¶ 10, at 5-6 (citing Salazar Aff. ¶ 18, at 5); Plaintiff's Response ¶ 10, at 7 (arguing that Salazar has offered different justifications for his actions, and this inconsistency suggests pretext).  The Court perceives no inconsistency between the reasons stated in Salazar's letter, that West could not perform her duties and that he would consider the "critical operational needs of the department" in renewing her part-time schedule, and the reasons offered in Salazar's affidavit, that he was concerned about losing the budget for the position and absorbing the work.  The Court concludes, therefore, that West presents no evidence that the decision to offer West a temporary part-time schedule was made in anything other than good faith.

West's Complaint raises several claims. In Count I, West alleges that TRD retaliated against her, in violation of the ADA, for having filed a charge of discrimination against TRD with the EEOC. In Count II, West brings a hostile work environment claim under the ADA, contending that the alleged "retaliation adversely affected the terms, conditions and privileges of employment enjoyed by Plaintiff." Complaint ¶ 35, at 6. Count III, West's First Amendment claim, brought under 42 U.S.C. § 1983, is three lines long. It states: "Defendants treated Plaintiff less favorably as stated herein in retaliation for Plaintiff's free expression of opposition to discrimination in violation of 42 U.S.C. § 1983, First Amendment to the U.S. Constitution and the Public Policy of the State of New Mexico." Complaint ¶ 38, at 7. In Claims IV to VII, West seeks damages for negligent supervision, breach of implied contact, breach of implied covenant of good faith and fair dealing, and for promissory estoppel.[16]

The parties filed cross motions for summary judgment. The Defendants move the Court, under rule 56 of the Federal Rules of Civil Procedure, for an order entering summary judgment on behalf of the Defendants and dismissing the Complaint with prejudice. The Defendants filed contemporaneously with their March 26, 2010 motion for summary judgment a memorandum in support of this motion. The Defendants also seek their costs of suit. The Defendants argue that West cannot establish a case of retaliation under the ADA, because her requests for accommodations were granted and she was not subjected to an adverse employment action, and because she cannot show a causal connection between her filing a charge of discrimination and the Defendants'

---

[16] West withdrew her claim for negligent supervision. See Transcript of Hearing at 5:3-6 (taken August 30, 2010)(Maynes)("Tr.")(the Court's citations to the transcript refer to the court reporter's original, unedited version; any final transcript may contain slightly different page and/or line numbers).

responses to her requests for accommodations.  The Defendants also argue that West's First-Amendment retaliation claim fails, because she cannot show that her disability discrimination complaints were speech made pursuant to her official duties or was a matter of public concern, and that Salazar enjoys qualified immunity.

In response to the Defendants' Motion for Summary Judgment, West argues that genuine issues of material fact exist and that she is, therefore, entitled to a trial on all of her claims. Response to Defendants' Motion for Summary Judgment Memorandum, filed July 16, 2010 (Doc. 94)("Plaintiff's Response").  On July 30, 2010, the Defendants filed their Reply.  The Defendants maintain that West has failed to identify a material disputed fact precluding summary judgment, and that the Defendants are entitled to entry of summary judgment in their favor and dismissal of West's Complaint.

In West's Amended Motion for Summary Judgment, she asserts that summary judgment is proper on all of her claims because of the absence of disputed material facts.  She argues that Defendants' delay in responding to her request for mileage reimbursement was unjustified and shows their explanation was pretextual, and the Defendants offered different justifications for their response to West's request for a part-time schedule, also showing pretext.  West further argues that filing a complaint with a party not in her chain of command is not speech pursuant to her official duties, that the Defendants' discrimination against her is a matter of public concern, and that Salazar was indifferent to her clearly established constitutional rights.  The Defendants responded to West's motion for summary judgment by largely restating the arguments made in their motion.  See Defendant New Mexico Taxation & Revenue Department's Response in Opposition to Plaintiff's Amended Motion for Summary Judgment and Memorandum of Law in Support Thereof, filed July

23, 2010 (Doc. 97)("Defendants' Response").  West replied, resting on her earlier arguments, but submitting additional exhibits.  See Plaintiff's Reply in Support of Her Amended Motion for Summary Judgment, filed August 9, 2010 (Doc. 101).

At the August 30, 2010 hearing, the Defendants argued that West failed to exhaust her administrative remedies for her hostile work environment claim.  See Tr. at 11:18-21 (Maynes).  The Court allowed the parties to file supplemental briefing on the matter.  On October 14, 2010, West filed a Letter/Reply, arguing that: (i) her hostile work environment claim was administratively exhausted because her hostile work environment claim related to the events in her EEOC Charge; and (ii) that the Defendants' waived this argument.  West invited the Court to apply a heightened tangible employment action standard to her retaliation claims.  See Plaintiff's Supplementary Letter/Reply, filed October 14, 2010 (Doc. 110)("Plaintiff's Letter/Reply").  On October 20, 2010, The Defendants filed a Letter/Reply arguing: (i) that West failed to exhaust her administrative remedies, because the EEOC Charge did not include a hostile work environment claim in name or substance; (ii) that West invoked an abrogated standard; and (iii) that West could not show a tangible employment action.

## LEGAL STANDARD FOR MOTIONS FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case."  Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)(internal quotation marks omitted).  See

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant meets this burden, rule 56(e) requires the non-moving party to designate specific facts showing that there is a genuine issue for trial.  See Celotex Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.")(internal quotes omitted).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated §., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  Rule 56 provides that "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his [or her] pleadings."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 256.  See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("However, 'once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.'" (citation omitted)).  Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation."  Colony Nat'l Ins. Co. v. Omer, No. 07-2123, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(citing Fed. R. Civ. P. 56(e) and Argo v.

-22-

Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006)).  "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'"  Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005, at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 250.  A mere "scintilla" of evidence will not avoid summary judgment.  Vitkus v. Beatrice Co., 11 F.3d at 1539.  Rather, there must be sufficient evidence on which the fact-finder could reasonably find for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251 (quoting Schuylkill & Dauphin Improv. Co. v. Munson, 81 U.S. 442, 448 (1871)); Vitkus v. Beatrice Co., 11 F.3d at 1539.  "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (internal citations omitted).  Where a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind three principles.  First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249.  Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving

party.  See Hunt v. Cromartie, 526 U.S. 541, 550-55 (1999); Anderson v. Liberty Lobby, Inc., 477

U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to

be drawn in his favor.").  Third, the court cannot decide any issues of credibility.  See Anderson v.

Liberty Lobby, Inc., 477 U.S. at 255.

### LAW REGARDING EXHAUSTION OF ADMINISTRATIVE REMEDIES

"[T]he ADA requires a plaintiff to exhaust her administrative remedies before filing suit."

Jones v. United Parcel Serv., Inc., 502 F.3d 1176, 1183 (10th Cir. 2007).  "The exhaustion of

administrative remedies is a jurisdictional prerequisite to instituting an action in federal court."

Showalter v. Weinstein, 233 F. App'x 803, 804 (10th Cir. 2007)(citing Woodman v. Runyon, 132

F.3d 1330, 1341 (10th Cir. 1997); Jones v. Runyon, 91 F.3d 1398, 1399 (10th Cir. 1996)).  The

failure to exhaust administrative remedies in a timely fashion, however, is not jurisdictional,

although it may bar a plaintiff from bringing his or her claims in federal court.  See Sizova v. Nat'l

Inst. of Standards & Tech., 282 F.3d 1320, 1325 (10th Cir. 2002)(noting that "a failure to timely file

an administrative charge . . . is not jurisdictional, [but that] a failure to file an administrative charge

at all . . . is a jurisdictional bar").  Failing to exhaust administrative remedies does not "bar an

employee from using the prior acts as background evidence in support of a timely claim."  Nat'l R.R.

Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).

### 1.	Title VII Precedent Applies to ADA Cases.

The ADA incorporates Title VII's EEOC enforcement procedures.  See 42 U.S.C.

§ 12117(a); Proctor v. United Parcel Serv., 502 F.3d 1200, 1208 n.4 (10th Cir. 2007)("Because the

ADA's anti-retaliation provision, 42 U.S.C. § 12203(a), contains essentially the same language as

Title VII's provision, 42 U.S.C. § 2000e-3(a), [Title VII precedent] applies in the ADA context as

well.").  Similarly, "[t]he Rehabilitation Act expressly incorporates and adopts the employment discrimination standards contained in Title I of the Americans with Disabilities Act." Detterline v. Salazar, 320 F. App'x 853, 856 (10th Cir. 2009).  Because of this relationship, "decisions under both Acts apply interchangeably to our analysis." Detterline v. Salazar, 320 F. App'x at 856 (quoting Vidacak v. Potter, 81 F. App'x 721, 723 (10th Cir. 2003)).

    2.    **The 300-Day Filing Time Limit**.

    Before commencing an ADA action in federal court in a state with an agency empowered to investigate employment discrimination, like the New Mexico Department of Labor, Human Rights Division, "a plaintiff first must exhaust administrative remedies by filing a charge of discrimination with the EEOC within 300 days of the allegedly unlawful employment practice." Castaldo v. Denver Public Sch., 276 F. App'x 839, 841 (10th Cir. 2008)(citing 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a); Proctor v. United Parcel Serv., 502 F.3d at 1206 & n.3 (explaining filing times in deferral states, which are those states that have "an agency empowered to investigate employment discrimination").  To exhaust administrative remedies, an individual claimant must: (i) timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge; and (ii) receive notice of the right to sue.  See Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999); 42 U.S.C. §§ 2000e-5(b), (c), (e), (f)(1).  "[A] plaintiff normally may not bring a[n] . . . action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter."  Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d at 1321.

    To be timely, a plaintiff must file the charge with the EEOC within 180 days or with a state

agency within 300 days of the complained-of conduct.  See Simms v. Okla. ex. rel. Dep't of Mental

Health & Substance Abuse Servs., 165 F.3d at 1327; Gunnell v. Utah Valley St. Coll., 152 F.3d

1253, 1260 n.3 (10th Cir. 1998); 42 U.S.C. § 2000e-5(e)(1); 29 C.F.R. § 1601.13 (1998).  Once an

individual receives notice of the right to sue, he or she has ninety days in which to file suit. See 42

U.S.C. § 2000e-5(f)(1).

      **3.**      **The Exhaustion of Administrative Remedies Is a Jurisdictional Requirement.**

In the United States Court of Appeals of the Tenth Circuit, exhaustion of administrative

remedies is a jurisdictional prerequisite to filing an ADA action.  See Jones v. United Parcel Serv.,

Inc., 502 F.3d at 1183; Alcivar v. Wynne, 268 F. App'x 749, 753 (10th Cir. 2008)("The Tenth

Circuit has consistently held that 'exhaustion . . . is a jurisdictional prerequisite to suit under Title

VII -- not merely a condition precedent to suit.'")(quoting Shikles v. Sprint/United Mgmt. Co., 426

F.3d 1304, 1317 (10th Cir. 2005)); Ransom v. U.S. Postal Service, 170 F. App'x 525, 527 & n.2

(10th Cir. 2006)("[A] claimant under the Rehabilitation Act . . . is required to present her claims to

the appropriate EEO agency before filing suit.")(citing 5 U.S.C. § 7702(a)(2)); Wells v. Shalala, 228

F.3d 1137, 1142-43 (10th Cir. 2000)); Jones v. Runyon, 91 F.3d 1398, 1399 (10th Cir.

1996)("Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title

VII."); Romero v. Union Pac. R.R., 615 F.2d 1303, 1303 (10th Cir. 1980).

Without such a filing, federal courts lack subject-matter jurisdiction to entertain

discrimination claims under that statutes, and a rule 12(b)(1) motion to dismiss is procedurally

proper. See Seymore v. Shawyer & Sons, Inc., 111 F.3d 794, 799 (10th Cir. 1997); Carmody v. SCI

Colo. Funeral Servs., Inc., 76 F. Supp. 2d 1101, 1103-04 (D. Colo. 1999).[17]  When a defendant

brings a motion to dismiss for lack of subject-matter jurisdiction under rule 12(b)(1) based on a

plaintiff's failure to exhaust administrative remedies in a timely manner, a court "analyze[s] th[e]

case under 12(b)(6) of the Federal Rules of Civil Procedure," unless a court considers materials

outside the complaint, in which case "it should . . . treat[] [the] motion as a motion for summary

judgment under Rule 56 of the Federal Rules of Civil Procedure." Douglas v. Norton, 167 F. App'x

698, 704-05 (10th Cir. 2006).

      a.     **The Scope of the EEOC Charge.**

     "A plaintiff's claim in federal court is generally limited by the scope of the administrative

investigation that can reasonably be expected to follow the charge of discrimination submitted to

the EEOC." MacKenzie v. City & County of Denver, 414 F.3d 1266, 1274 (10th Cir. 2005).  "We

liberally construe charges filed with the EEOC in determining whether administrative remedies have

been exhausted as to a particular claim." Jones v. United Parcel Serv., Inc., 502 F.3d at 1186.  "This

more lenient pleading standard contemplates the fact that administrative charges of unlawful

---

[17] The Tenth Circuit has mentioned some concern whether failure to exhaust administrative remedies is still a jurisdictional prerequisite to suit after the Supreme Court's decision in Jones v. Bock, 549 U.S. 199 (2007).  See, e.g., Alcivar v. Wynne, 268 F. App'x at 753 (noting that "Jones v. Bock held that under the PLRA [Prison Litigation Reform Act] exhaustion is an affirmative defense to be raised by the defendant and not a jurisdictional pleading requirement," but finding it was "not . . . necessary to decide whether exhaustion is jurisdictional under Title VII after Jones."); McQueen v. Colo. Springs Sch. Dist. No. 11, 488 F.3d 868, 874 (10th Cir. 2007)("Although courts have repeatedly referred to the exhaustion requirement as jurisdictional, . . . recent Supreme Court jurisprudence in other contexts casts doubt on that characterization . . . .")(citations omitted, emphasis in original).  A recent unpublished Tenth Circuit decision indicates that Jones v. Bock did not demote the exhaustion requirement from a jurisdictional prerequisite to an affirmative defense, at least in the Title VII context.  See Martinez v. Target Corp., No. 09-2112, 2010 WL 2616651, at *3 n.2 (10th Cir. July 1, 2010)(Kelly, Porfilio, O'Brien, JJ.)("Martinez is not proceeding under the PLRA; Bock is inapposite.  She does not point us to a single decision -- of this or any other court -- applying Bock in the context of a Title VII or ADEA case.").

employment practices are regularly filled out by employees who do not have the benefit of counsel."

Mitchell v. City of Wichita, 112 F. App'x 662, 667 (10th Cir. 2005).  "[T]he charge must contain

facts concerning the discriminatory and retaliatory actions underlying each claim."  Jones v. United

Parcel Serv., Inc., 502 F.3d at 1186.  "The failure to mark a particular box creates a presumption that

the charging party is not asserting claims represented by that box."  Jones v. United Parcel Serv.,

Inc., 502 F.3d at 1186 (citing Gunnell v. Utah Valley State College, 152 F.3d 1253, 1260 (10th Cir.

1998)).  "The presumption may be rebutted, however, if the text of the charge clearly sets forth the

basis of the claim."  Jones v. United Parcel Service, Inc., 502 F.3d at 1186.

Liberally construing EEOC complaints requires courts to look beyond the formalities of the

complaint form.  The Tenth Circuit held in Jones v. United Parcel Service, Inc. that, while Jones

checked "no" to the questions, "[d]o you believe that the employer regarded you as disabled?" and

"did you advise you employer that you required an accommodation?", Jones' allegations that UPS

interfered with a medical evaluation to ensure Jones was not released to return to work, that UPS

did not permit Jones to return to work despite releases from two doctors, and that Jones checked a

box for retaliation, should have triggered an administrative investigation into whether UPS

discriminated against Jones because he was disabled and whether UPS retaliated against him.  502

F.3d at 1182, 1186-87.  Because Jones checked "no" in response to the question whether he advised

his employer he needed accommodation and because the text of the charge did not contain facts that

would prompt an investigation of such a claim, the Tenth Circuit held that Jones did not exhaust his

administrative remedies with respect to his failure-to-accommodate claim.  502 F.3d at 1187.

In Duncan v. Manager Department of Safety, 397 F.3d 1300 (10th Cir. 2005), a former police

officer filed an EEOC charge against the city on April 14, 1998 and checked the box for retaliation.

See 397 F.3d at 1314.  The officer alleged a series of acts before the date the EEOC charge was filed that were supposedly in retaliation for her use of the complaint process.  See 397 F.3d at 1314.  The Tenth Circuit held that none of the actions the officer alleged in her EEOC charge were sufficient to support a retaliation claim.  See 397 F.3d at 1314.  The Tenth Circuit noted that her allegation in her complaint that in August of 1998 -- months after filing her EEOC complaint -- she was transferred to the police academy in retaliation for filing her original EEOC charge was severe enough to support a retaliation claim. See 397 F.3d at 1314.  The Tenth Circuit noted, however, that, because the officer did not file an additional EEOC charge alleging that specific retaliatory act, she did not exhaust her administrative remedies and thus the district court correctly dismissed her claim for retaliation.  See 397 F.3d at 1314.

In Annett v. University of Kansas, 371 F.3d 1233 (10th Cir. 2003), the Tenth Circuit declined to consider Annett's contention that receiving the position of adjunct lecturer versus adjunct professor constituted a retaliation action, because she failed to exhaust her administrative remedies.  See id. at 1238.  The Tenth Circuit considered Annett's charge of discrimination filed September 6, 2000 and her "complaint narrative" submitted on May 31, 2000, and found no reference to a distinction between "lecturer" and "professor" as probative of discrimination or retaliation.  371 F.3d at 1238.  Annett's complaint stated: "I was given an Adjunct faculty position, but no Principal Investigator status, which prevents me from obtaining grants."  371 F.3d at 1238.  Annett's complaint narrative stated: "My own position as an Adjunct Faculty member at KU was downgraded to prevent me from submitting grants that could act as an alternative source of income."  371 F.3d at 1238.  The Tenth Circuit held that it could not conclude "that this sentence represents the distinction between being appointed an adjunct lecturer versus an adjunct professor in 1999 or

2000." 371 F.3d at 1238.  Furthermore, the Tenth Circuit noted that it "lack[ed] jurisdiction to review Title VII claims that are not part of a timely-filed EEOC charge," including actions that occurred after the charge was filed.  371 F.3d at 1238 (citing Seymore v. Shawver & Sons, Inc., 111 F.3d at 799).

> Previously, we would proceed to examine whether the alleged employment action, provided it occurred after the filing of the EEOC charge, was "like or reasonably related to the allegations of the EEOC charge."  However, our recent holding in Martinez v. Potter, has foreclosed this line of inquiry.  In Martinez, we abrogated the continuing violation exception to our jurisdictional requirements to allege a claim of retaliation and held that "unexhausted claims involving discrete employment actions are no longer viable."  In so doing, we relied on National R.R. Passenger Corp. v. Morgan, which concluded that each discrete retaliatory action constitutes its own unlawful employment practice for which administrative remedies must be exhausted, and we applied Morgan to incidents occurring after an employee's filing of an EEO complaint, and we applied Morgan to incidents occurring after an employee's filing of an EEO complaint..

Annett v. Univ. of Kansas, 371 F.3d at 1238 (internal quotations and citations omitted). Thus, the Tenth Circuit dismissed Annett's claim for failure to exhaust administrative remedies.

### b.        Each Discrete Incident Must be Exhausted.

Before 2002, under the "continuing violation" theory, the Tenth Circuit recognized a limited exception to the exhaustion requirement "when the unexhausted claim is for discrimination like or reasonably related to the allegations of the EEOC charge."  Simms v. Oklahoma ex. rel. Dep't of Mental Health and Substance Abuse Servs., 165 F.3d at 1327 (internal citations and quotations omitted).  The Tenth Circuit "construed the 'reasonably related' exception to include most retaliatory acts subsequent to an EEOC filing."  165 F.3d at 1327 (citing Seymore v. Shawyer & Sons, Inc., 111 F.3d at 799).  In Martinez v. Potter, 347 F.3d 1208 (2003), however, the Tenth Circuit noted that the "Supreme Court's recent pronouncement in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), has effected fundamental changes to the doctrine allowing

-30-

administratively unexhausted claims in Title VII actions." 347 F.3d at 1210. The Tenth Circuit's "decisions have unambiguously recognized <u>Morgan</u> as rejecting application of the 'continuing violation' theory." <u>Martinez v. Potter</u>, 347 F.3d at 1211 (citing <u>Davidson v. America Online, Inc.</u>, 337 F.3d 1179 (10th Cir. 2003)). The Tenth Circuit stated:

> We agree with the government that such unexhausted claims involving discrete employment actions are no longer viable. <u>Morgan</u> abrogates the continuing violation doctrine as previously applied to claims of discriminatory or retaliatory actions by employers, and replaces it with the teaching that each discrete incident of such treatment constitutes its own unlawful employment practice for which administrative remedies must be exhausted.

347 F.3d at 1210 (internal citations and quotations omitted).

Thus, under <u>National Railroad Passenger Corp. v. Morgan</u>, each discrete act of discrimination must be administratively exhausted. "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. at 114 (internal citations and quotations omitted). In <u>National Railroad Passenger Corp. v. Morgan</u>, this rule applied to bar a plaintiff from suing on claims for which no administrative remedy had been sought when those incidents of which the plaintiff complained occurred more than 300 days before the filing of the plaintiff's EEO complaint. <u>See</u> <u>Martinez v. Potter</u>, 347 F.3d at 1210. "The rule is equally applicable, however, to discrete claims based on incidents occurring after the filing of Plaintiff's EEO complaint." <u>Martinez v. Potter</u>, 347 F.3d at 1210-11. The Tenth Circuit has stated: "Our decisions have unambiguously recognized <u>Morgan</u> as rejecting application of the continuing violation theory." <u>Martinez v. Potter</u>, 347 F.3d at 1211 (internal quotations omitted).

In <u>Jones v. United Parcel Service</u>, the Tenth Circuit explained how the requirement that

plaintiffs must exhaust each discrete claims works in conjunction with courts liberally construing

EEOC charges.  502 F.3d at 1186.

> The next step in determining whether a plaintiff has exhausted her administrative
> remedies is to determine the scope of the allegations raised in the EEOC charge
> because "[a] plaintiff's claim in federal court is generally limited by the scope of the
> administrative investigation that can reasonably be expected to follow the charge of
> discrimination submitted to the EEOC. . . . We emphasize, however, that our inquiry
> is limited to the scope of the administrative investigation that can reasonably be
> expected to follow from the discriminatory acts alleged in the administrative charge.
> In other words, the charge must contain facts concerning the discriminatory and
> retaliatory actions underlying each claim; this follows from the rule that "each
> discrete incident" of alleged discrimination of retaliation "constitutes its own
> 'unlawful employment practice' for which administrative remedies must be
> exhausted."

Jones v. United Parcel Service, 502 F.3d at 1186 (citations omitted).

This Court has previously held that these principles demand that an act which occurs

subsequent to the filing of the formal EEOC charge would not be included in the scope of the

administrative investigation and would constitute its own "unlawful employment practice for which

administrative remedies must be exhausted."  Farley v. Leavitt, NO. CIV 05-1219 JB/LFC, 2007

WL 6364329, at *14 (D.N.M. Declaratory. 31, 2007)(Browning, J.)(quoting Jones v. United Parcel

Serv., Inc., 502 F.3d at 1186)(internal quotation marks omitted).  Tenth Circuit holdings support this

conclusion.  See Duncan v. Manager Department of Safety, 397 F.3d at 1314 (affirming dismissal

of retaliation claim postdating plaintiff's EEO complaint, stating: "Ms. Duncan did not file an

additional EEOC charge alleging the retaliatory act however, and this failure to exhaust her

administrative remedies is fatal to her claim"); Annett v. University of Kansas, 371 F.3d at 1238

("Previously, we would proceed to examine whether the alleged employment action, provided it

occurred after the filing of the EEOC charge, was 'like or reasonably related to the allegations of

the EEOC charge'[;] [h]owever, our recent holding in Martinez v. Potter, has foreclosed this line of

inquiry.").

> **c.     A Plaintiff Must Exhaust at Least One Related Act that Is the Basis of a Hostile Work Environment Claim.**

A different rule applies to hostile environment claims, for which "the continuing violation doctrine remains viable." Semsroth v. City of Wichita, 304 F. App'x 707, 722 (10th Cir. 2008). An employer creates a hostile work environment when "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Davis v. U.S. Postal Serv., 142 F.3d 1334, 1341 (10th Cir. 1998)(quotations omitted). Under National Railroad Passenger Corp. v. Morgan, a series of events that constitute a hostile environment claim are considered one unlawful action. See West v. Norton, 376 F. Supp. 2d 1105, 1129 (D.N.M. 2004)(Browning, J.). "Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 115 (internal citations and quotations omitted). An "unlawful employment practice" that constitutes a hostile work environment thus cannot be said to occur on any particular day, but rather occurs over a series of days or years. Id. (citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)). Accordingly, so long as one of the incidents included within the claim of hostile environment occurred within the prescribed time limit, other conduct that occurred outside of the proscribed time period, but contributing to the hostile work environment, is not time barred. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 105 (holding "that consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as any act contributing to that hostile environment takes place within the statutory time period"); West v. Norton, 376 F. Supp. 2d at 1129.

In <u>National Railroad Passenger Corp. v. Morgan</u>, the Supreme Court of the United States provided three factors courts may consider to determine if "a series of separate acts . . . collectively constitute one 'unlawful employment practice.'"   536 U.S. at 117 (quoting 42 U.S.C. § 2000e-5(e)(1)).  "[A] series of alleged events comprises the same hostile environment where 'the pre- and post-limitations period incidents involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers.'" <u>Duncan v. Manager, Dep't of Safety, City & Co. of Denver</u>, 397 F.3d at 1309 (quoting <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. at 120)("<u>Morgan</u> advises looking at the type of these acts, the frequency of the acts, and the perpetrator of the acts.").

In <u>National Railroad Passenger Corp. v. Morgan</u>, the Supreme Court addressed whether an EEOC charge alleging the plaintiff was "consistently harassed and disciplined more harshly than other employees on account of his race" was part of the same hostile work environment claim as "evidence from a number of other employees that managers made racial jokes, performed racially derogatory acts, made negative comments regarding the capacity of blacks to be supervisors, and used various racial epithets." 536 U.S. at 105, 120.  While expressly declining to make a judgment on the merits of the plaintiff's claims, the Supreme Court found it could not say that these were "not part of the same actionable hostile environment claim." <u>Id.</u> at 121.

In <u>Duncan v. Manager, Dep't of Safety, City & Co. of Denver</u>, the Tenth Circuit addressed a plaintiff's hostile environment claim alleging "three groups of acts that plausibly took place during the filing period: (1) the harassing statements by Sgt. Andrews; (2) the spreading of rumors by Lt. Leone; and (3) the anonymous magazine article placed in her box and the theft of a notebook by an unknown perpetrator."  397 F.3d at 1309.  The Tenth Circuit "examin[ed] the acts in the filing

period and determin[ed] what acts outside of the filing period [we]re related by type, frequency, and perpetrator.  The entire range of related acts constitute[d] the hostile work environment underlying Ms. Duncan's claim."  397 F.3d at 1309.  The Tenth Circuit found:

> The alleged actions of Sgt. Andrews and Lt. Leone began after Ms. Duncan returned to District Four in late 1996 and continued into the filing period. These acts are related by type, frequency, and perpetrator, thus all these acts, including those before the beginning of the filing period, are within the scope of Ms. Duncan's hostile work environment claim.  The alleged hostile actions that occurred before Ms. Duncan returned to District Four, however, are not part of the same hostile work environment as those alleged during the filing period. The acts she alleges immediately prior to her return are an anonymous letter threatening physical violence and Chief Michaud's adjustment of her score on the sergeant's exam. While these acts may have a temporal relation to the behavior of Sgt. Andrews and Lt. Leone, they are of a different character, they took place while Ms. Duncan was on a different assignment, and they were not perpetrated by the same people. Even if we draw all inferences in Ms. Duncan's favor, we do not think a rational jury could conclude that any of the allegations before her return to District Four are part of the same hostile work environment as those acts alleged during the filing period.

Duncan v. Manager, Dep't of Safety, City & Co. of Denver,  397 F.3d at 1309.

### 4.  Time Requirements for Exhausting Administrative Remedies Are Not Jurisdictional.

While failure to exhaust administrative remedies is a jurisdictional bar to suit, in Zipes v. Trans World Airlines, Inc., 455 U.S. 385 (1982), the Supreme Court held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." 455 U.S. at 393.  See DeWalt v. Meredith Corp., 288 F. App'x 484, 490 (10th Cir. 2008)(citing Zipes v. Trans World Airlines, Inc., 455 U.S. at 393; Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1174-75 (10th Cir. 1998)).   The Tenth Circuit treats a plaintiff's failure to timely exhaust administrative remedies not "as a jurisdictional issue, [but] rather . . . as an affirmative defense to be raised by [defendants]."  DeWalt v. Meredith Corp., 288 F. App'x at 490.

Though not jurisdictional, the time limit is not an arbitrary barrier.  It is designed to give an agency timely notice of potentially illegal conduct, to discover and correct its own errors, and possibly to conciliate the claim.  See Sampson v. Civiletti, 632 F.2d at 863.  An employee who fails to comply with the limitation period is barred from seeking judicial relief in federal court, absent a defense of equitable tolling.  See Davis v. United States Postal Serv., 142 F.3d at 1339; Wilson v. West, 962 F. Supp. 939, 944 (1997).

### a.    Exceptions of Equitable Tolling Are Narrowly Construed.

"Equitable exceptions, however, have been narrowly construed."  Harms v. I.R.S., 321 F.3d 1001, 1006 (10th Cir. 2003).  See Montoya v. Chao, 296 F.3d 952, 957 (10th Cir. 2002)(stating that "federal courts have typically extended equitable relief only sparingly").  The Tenth Circuit "has generally recognized equitable tolling of Title VII periods of limitation only if circumstances rise to the level of active deception which might invoke the powers of equity to toll the limitations period."  Montoya v. Chao, 296 F.3d at 957.  See Godwin v. Sw. Research Inst., 237 F. App'x 306, 307 (10th Cir. 2007)("Our precedent requires that an ADEA plaintiff demonstrate 'active deception' on the part of an employer, the EEOC, or the court.");  Biester v. Midwest Health Servs., Inc., 77 F.3d 1264, 1269 n.2 (10th Cir. 1996)(noting in a Title VII case that "extraordinary circumstances" are "necessary to justify equitable tolling under established Tenth Circuit precedent.").  "Equitable tolling may be appropriate where a plaintiff has been lulled into inaction by an employer's 'deliberate design . . . or actions that the employer should unmistakably have understood would cause the employee to delay filing his charge.'"  Al-Ali v. Salt Lake Cmty. Coll., 269 F. App'x 842, 847 (10th Cir. 2008)(quoting Hulsey v. Kmart, Inc., 43 F.3d 555, 557 (10th Cir. 1994)).  Equitable tolling "is not warranted where an employee is aware of all of the facts constituting discriminatory

treatment but lacks direct knowledge of the employer's subjective discriminatory purpose." Bennett v. Coors Brewing Co., 189 F.3d 1221, 1235 (10th Cir. 1999)(citation omitted).

### b.    Equitable Tolling Is Within the District Court's Discretion.

The decision whether to equitably toll the limitations period rests within the district court's sound discretion.  See Purrington v. Univ. of Utah, 996 F.2d 1025, 1030 (10th Cir. 1993).  In Castaldo v. Denver Public Schools, 276 F. App'x 839 (10th Cir. 2008), the Tenth Circuit found that the district court did not abuse its discretion when it chose not to apply equitable tolling to the plaintiff's EEOC charge when the plaintiff alleged: (i) that his employer did not post notices regarding the filing of EEOC charges; (ii) that he was too incapacitated by his shoulder injuries to file an EEOC charge; and (iii) that he was proceeding pro se.  See 276 F. App'x at 841.  The Tenth Circuit found no error in the district court's conclusion that the failure to post EEOC notices was not a sufficient justification for equitable tolling.  See 276 F. App'x at 841.  See also Wilkerson v. Siegfried Ins. Agency, Inc., 683 F.2d 344, 347 (10th Cir. 1982)(holding that "the simple failure to post . . . notices, without intent to actively mislead the plaintiff respecting the cause of action, does not extend the time within which a claimant must file his or her discrimination charge").  The district court noted that the plaintiff did not allege that his employer intended to actively deceive him by failing to post notices about filing EEOC charges.  See Castaldo v. Denver Pub. Schs., 276 F. App'x at 841.  The Tenth Circuit also concluded that the statements in the plaintiff's EEOC charge revealed that it was not his alleged incapacity that prevented him from filing a timely charge, but rather the fact that he was unaware of his obligation to do so until he consulted an attorney.  See 276 F. App'x at 841.  The Tenth Circuit found that "his ignorance of the filing requirement does not entitle him to equitable tolling."  276 F. App'x at 842.  Finally, the Tenth Circuit upheld the district court's

finding that the plaintiff's pro-se status did not justify equitable tolling, because the plaintiff had the ability to contact an attorney but elected not to do so until well after the expiration of the filing period.  See id. at 842.

In Godwin v. Southwest Research Institute, the Tenth Circuit held that the district court did not abuse its discretion in refusing to employ equitable tolling when the plaintiff misaddressed his EEOC submission, which arrived forty-four days after the time limit had expired.  See 237 F. App'x. at 307-08.  In Baker v. Perfection Hy-Test, No. 95-6091, 1996 WL 1162 (10th Cir. Jan. 2, 1996), the Tenth Circuit held that there was no active deception sufficient to toll the 300-day deadline where the plant manager of the plaintiff's employer told the plaintiff, after his demotion, that "restructuring was happening 'all over the country,' that plaintiff 'couldn't sue,' [and] that he might try but he 'wouldn't get to first base.'" 1996 WL 1162, at * 2.  The Tenth Circuit found that the statements "at most expressed an opinion concerning plaintiff's likelihood of success."  1996 WL 1162, at *7.

## LAW REGARDING ADA RETALIATION CLAIMS

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).  "Because the ADA's anti-retaliation provision, 42 U.S.C. § 12203(a), contains essentially the same language as Title VII's provision, 42 U.S.C. § 2000e-3(a), [Title VII precedent] applies in the ADA context as well."  Proctor v. United Parcel Serv., 502 F.3d at 1208 n.4 (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)). See Haynes v. Level 3 Communs, 456 F.3d 1215, 1228 (10th Cir. 2006)(applying the same elements

-38-

of prima-facie case to Title VII and ADA retaliation claims); Lanman v. Johnson County, Kan., 393 F.3d 1151, 1155-56 (10th Cir. 2004)(asserting that the shared language, "parallel purposes and remedial structures of the [ADA and Title VII] . . . support a consistent interpretation).

### 1.    Direct Evidence of Discrimination.

A plaintiff must support his or her case with either direct or circumstantial evidence.  See Davidson v. Am. Online, Inc., 337 F.3d 1179, 1189 (10th Cir. 2003).  "Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption."  Hall v. U.S. Dep't of Labor, 476 F.3d 847, 854 (10th Cir. 2007).  Moreover, "[d]irect evidence demonstrates on its face that the employment decision was reached for discriminatory reasons." Danville v. Reg'l Lab Corp., 292 F.3d 1246, 1249 (10th Cir. 2002).  "A statement that can plausibly be interpreted two different ways -- one discriminatory and the other benign -- does not directly reflect illegal animus, and, thus, does not constitute direct evidence."  Hall v. U.S. Dep't of Labor, 476 F.3d at 855 (quoting Patten v. Wal-Mart Stores East, Inc., 300 F.3d 21, 25 (1st Cir. 2002))(internal quotation marks omitted).  "When a plaintiff alleges that discriminatory comments constitute direct evidence of discrimination, . . . the plaintiff must demonstrate a nexus exists between the allegedly discriminatory statements and the decision to terminate her."  Hall v. U.S. Dept. of Labor, Admin. Review Bd., 476 F.3d at 857 (quoting McCowan v. All Star Maint. Inc., 273 F.3d 917, 922 n.3 (10th Cir. 2001))(alterations in original).  "Direct evidence is that which demonstrates a specific link between the alleged discriminatory animus and the challenged [employment] decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated [the employer's] decision to take the adverse employment action." Deneen v. Nw. Airlines, 132 F.3d 431, 436 (8th Cir. 1998).  "Statements of personal opinion, even

when reflecting personal bias or prejudice, do not constitute direct evidence of discrimination, but at most, are only circumstantial evidence of discrimination because the trier of fact must infer discriminatory intent from such statements." Hall v. U.S. Dep't of Labor, 476 F.3d at 855 (citing Shorter v. ICG Holdings, Inc., 188 F.3d 1204, 1207 (10th Cir. 1999)).

### 2.   Circumstantial Evidence and Establishing a Prima-Facie Case of Disability Discrimination.

In the absence of direct evidence, courts apply the burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Anderson v. Coors Brewing Co., 181 F.3d 1171, 1178 (10th Cir. 1999)(asserting that the McDonnell Douglas Corp. v. Green framework applies to ADA retaliation claims)(citing Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)). To establish a prima-facie case of retaliation, a plaintiff must show: "(1) that he [or she] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." Proctor v. United Parcel Serv., 502 F.3d 1200, 1208 (10th Cir 2007) (quoting Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d at 1202.

### a.   Protected Activity.

A plaintiff must show that he or she engaged in a statutorily protected activity. See Proctor v. United Parcel Serv., 502 F.3d at 1208. Filing an EEOC complaint is protected activity. See Anderson v. Coors Brewing Co., 181 F.3d at 1178 ("By filing an EEOC claim, Plaintiff engaged in protected activity."). "There is no dispute that [the plaintiff's] EEO complaints are protected activity." Stover v. Martinez, 382 F.3d 1064, 1071 (10th Cir. 2004).

### b.   Materially Adverse Employment Action.

A plaintiff must show that the employer subjected the plaintiff to a materially adverse

employment action.  See Proctor v. United Parcel Serv., 502 F.3d at 1208.  An adverse action "is not limited to discriminatory actions that affect the terms and conditions of employment." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. at 64.  "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d 1126, 1133 (10th Cir. 2010)(quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. at 68)(internal quotation marks omitted).  "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. at 68 ("We speak of material adversity because we believe it is important to separate significant from trivial harms.").  "We construe the phrase 'adverse employment action' liberally and do not limit it to 'monetary losses in the form of wages or benefits.'"  Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d at 1133 (quoting Annett v. Univ. of Kan., 371 F.3d at 1239).  Acts that carry "a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects" may be considered adverse actions, although "a mere inconvenience or an alteration of job responsibilities will not suffice."  Annett v. Univ. of Kan., 371 F.3d at 1239 (internal quotation marks and citation omitted).

In Anderson v. Clovis Mun. Schs., 265 F. App'x 699 (10th Cir. 2008), the Tenth Circuit, in an unpublished opinion, addressed the requirement of a tangible adverse employment action in the context of a disparate-treatment claim where an employee, who had been placed on a growth plan, alleged other harsh treatment and a written reprimand in support of his claim that he suffered a hostile work environment.  Relying on Schuler v. City of Boulder, 189 F.3d 1304 (10th Cir. 1999),

-41-

Anderson argued that the growth plan and formal reprimand rose to the level of an adverse employment action under the law of the Tenth Circuit.  In discussing Anderson's reliance on <u>Schuler v. City of Boulder</u>, the Tenth Circuit stated: "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action.  Otherwise, minor and even trivial employment actions . . . would form the basis of a discrimination suit." <u>MacKenzie v. City and County of Domier</u>, 414 F.3d 1266, 1279 (10th Cir. 2005). <u>See</u> <u>Heno v. Sprint/United Mgnt. Co.</u>, 208 F.3d 847, 857 (10th Cir. 2007)(explaining that Title VII only prescribes discriminatory conduct that "alters the employee's compensation, terms, conditions, or privileges of employment, or adversely affects his [or her] status as an employee.")(quotations omitted).  "Only acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits will rise to the level of an adverse employment action."  <u>Robinson v. Cavalry Portfolio Serv., LLC</u>, 365 F. App'x 104, 114 (10th Cir. 2010)(quoting <u>Haynes v. Level 3 Communs</u>, 456 F.3d at 1218-19).

Mere delay, without more, is not enough to establish an adverse employment action.  <u>See</u> <u>Tapia v. City of Albuquerque</u>, 170 F. App'x 529, 535 (10th Cir. 2006)(holding an employer's delay transferring an employee out of an allegedly discriminatory working situation did not amount to an adverse employment action); <u>Mohankumar v. Kan. State Univ.</u>, 221 F.3d 1352, at *3 (10th Cir. 2000)("[P]laintiff did not suffer any adverse employment action as a result of defendants' . . . delay in hiring her as a post-doctoral fellow."); <u>Amro v. Boeing Co.</u>, 232 F.3d 790, 797 (10th Cir. 2000)(holding an employer's delay of several months in transferring an employee did not amount to an adverse employment action).

In <u>Selenke v. Medical Imaging of Colorado</u>, 248 F.3d 1249 (10th Cir. 2001), the Tenth Circuit reviewed cases from other circuits, and found that, in some circumstances, "an employer's delay in providing reasonable accommodation may violate the ADA." 248 F.3d at 1262 (citing <u>Terrell v. USAir</u>, 132 F.3d 621, 628 (11th Cir. 1998)(affirming grant of summary judgment to an employer on employee's claim that it violated the ADA by failing to provide her with a special keyboard for three months, and reasoning that the plaintiff "had some access" to the keyboard during that time and "was not required to type when she had no access"); <u>Hartsfield v. Miami-Dade County</u>, 90 F. Supp.2d. 1363, 1371-73 (S.D. Fla. 2000)(granting summary judgment on employee's claim that ten-month delay in providing special equipment and training violated the ADA and holding that "[w]here an accommodation is delayed an employer does not violate the ADA, as long as the employee receives some other accommodation or at least does not suffer adverse employment action"); <u>Anderson v. Ross Stores, Inc.</u>, No. C 99-4056 CRB, 2000 WL 1585269, at *8 (N.D. Cal. Oct. 10, 2000)(collecting cases); <u>Powers v. Polygram Holding, Inc.</u>, 40 F. Supp. 2d 195, 202 (S.D.N.Y. 1999)(granting employer's motion for summary judgment on employee's claim that a three-week delay in granting a request for reduced hours violated the ADA); <u>Krocka v. Riegler</u>, 958 F. Supp. 1333, 1342 (N.D. Ill.1997)(holding that "an unreasonable delay in implementing a 'reasonable accommodation' can constitute a discriminatory act" and refusing to dismiss a claim that an eight-month delay in assigning an employee to the desired shift constituted a failure to reasonably accommodate)). Based on its review of these cases, the Tenth Circuit established four factors for determining whether a delay in providing a reasonable accommodation violated the ADA: (i) "the length of the delay"; (ii) "the reasons for the delay"; (iii) "whether the employer has offered any alternative accommodations while evaluating a particular request"; and (iv) "whether the employer

-43-

has acted in good faith." Selenke v. Medical Imaging of Colo., 248 F.3d at 1262-63. The Tenth

Circuit held that, where the delay is reasonable under these factors, it does not amount to an adverse

employment action. See 248 F.3d at 1265.

        c.      **A Causal Connection Between the Protected Activity and the Adverse Action.**

A plaintiff must show that a causal connection existed between the protected activity and the

materially adverse action. See Proctor v. United Parcel Serv., 502 F.3d at 1208. Proving a causal

connection is a necessary element in an ADA retaliation case. See McGovern v. City of Eufaula,

472 F.3d 736, 741 (10th Cir. 2006). "Causal connection may be established by producing 'evidence

of circumstances that justify an inference of retaliatory motive, such as protected conduct closely

followed by adverse action.'" Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d at 1134

(quoting Haynes v. Level 3 Commc'ns, LLC, 456 F.3d 1215, 1228 (10th Cir. 2006)).

Close temporal proximity may give rise to inference of retaliation if adverse action is "very

closely connected in time to the protected activity." Piercy v. Maketa, 480 F.3d 1192, 1198 (10th

Cir. 2007). A "three-month gap between [a plaintiff's] EEOC complaint and his suspension [i]s too

long to establish causation by temporal proximity." Hall v. Interstate Brands Corp., No. 09-3229,

2010 WL 3565741, at *3 (10th Cir. Sept. 15 2010)(citing Hysten v. Burlington N. & Santa Fe Ry.,

296 F.3d 1177, 1183-84 (10th Cir. 2002)(three-month gap between protected activity and adverse

action was too long to establish causation)).

        3.      **Burden-Shifting Under McDonnell Douglas.**

If the plaintiff establishes a prima-facie case for any of his discrimination claims, "the burden

shifts to the defendant to come forward with a legitimate nondiscriminatory reason for its

employment related decision." Mitchell v. City of Wichita, Kan., 140 F. App'x 767, 777 (10th Cir.

2005).  "Upon the employer's articulation of legitimate, nondiscriminatory reasons . . . the presumption of discrimination established by the prima-facie case simply drops out of the picture." Kelly v. City of Albuquerque, 375 F. Supp. 2d at 1210 (internal quotations omitted).  "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'"  Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 142 (2000)(quoting St. Mary's Honor Center v. Hicks, 509 U.S. 502, 510 (1993)).  The relevant inquiry is not whether the employer's proffered reasons were wise or correct, but whether the employer honestly believed those reason and acted in good faith upon these beliefs.  See Proctor v. United Parcel Serv., 502 F.3d at 1211 (quoting Stoner v. Martinez, 382 F.3d 1064, 1076 (10th Cir. 2004)).

Once the defendant produces a legitimate, nondiscriminatory explanation for the defendant's action, to survive summary judgment, the plaintiff must establish a genuine question of material fact whether the defendant's explanation is pretextual.  To establish a genuine issue of material fact as to pretext, a plaintiff must demonstrate that the Defendant's "proffered non-discriminatory reason is unworthy of belief."  Pinkerton v. Colo. Dept. of Transp., 563 F.3d 1052, 1065 (10th Cir. 2009)(internal quotation marks and citations omitted).  To meet this standard, a plaintiff must produce evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Pinkerton v. Colo. Dept. of Transp., 563 F.3d at 1065 (internal quotation marks and citations omitted).  "If a plaintiff advances evidence upon which a factfinder could conclude that the defendant's allegedly nondiscriminatory reasons for the employment decisions are pretextual, the court should deny summary judgment."  Reinhardt v.

-45-

Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d at 1134.  "[A] plaintiff's prima facie case [of discrimination], combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. at 148.  Consequently, "once a plaintiff presents evidence sufficient to create a genuine factual dispute regarding the veracity of a defendant's nondiscriminatory reason, we presume the jury could infer that the employer acted for a discriminatory reason and must deny summary judgment." Bryant v. Farmers Ins. Exchange, 432 F.3d at 1125.

> Debunking one of the employer's explanations defeats the case for summary judgment "only if the company has offered no other reason that, if that reason stood alone (more precisely if it did not have support from the tainted reason), would have caused the company to take the action of which the plaintiff is complaining."

Jaramillo v. Colo. Judicial Dep't, 427 F.3d 1303, 1310 (10th Cir. 2005)(quoting Russell v. Acme-Evans Co., 51 F.3d 64, 69 (7th Cir. 1995)).

### LAW REGARDING FIRST-AMENDMENT RETALIATION CLAIMS

The Tenth Circuit applies "a five-prong analysis to determine whether action taken against an employee constitutes retaliation in violation of the employee's First Amendment rights." Hook v. Regents of Univ. of Cal., No. 09-2102, 2010 WL 3529414, at *10 (10th Cir. Sept. 13, 2010).

> First, the court must determine whether the employee speaks pursuant to his official duties. If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created.  Second, if an employee does not speak pursuant to his official duties, but instead speaks as a citizen, the court must determine whether the subject of the speech is a matter of public concern.  If the speech is not a matter of public concern, then the speech is unprotected and the inquiry ends.  Third, if the employee speaks as a citizen on a matter of public concern, the court must determine whether the employee's interest in commenting on the issue outweighs the interest of the state as employer.  Fourth, assuming the employee's interest outweighs that of the employer, the employee must show that his speech was a substantial factor or a motivating factor in a

detrimental employment decision.  Finally, if the employee establishes that his speech was such a factor, the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech.

Couch v. Bd. of Trs. of Mem'l Hosp., 587 F.3d 1223, 1235 (10th Cir. 2009)(quotations and citation omitted).  "Implicit within this five-prong analysis 'is a requirement that the public employer have taken some adverse employment action against the employee.'"  Hook v. Regents of Univ. of Cal., 2010 WL 3529414, at *10 (quoting Couch v. Bd. of Trs. of Mem'l Hosp., 587 F.3d at 1235-36).  The standard for determining whether an employer subjected an employee to an adverse employment action is the same for retaliation claims under the First Amendment and Title VII, see Hook v. Regents of Univ. of Cal., 2010 WL 3529414, at *10,[18] which is the same standard that

_____

[18] The Tenth Circuit has recognized that, "[p]rior to November 2009, there was some confusion in our circuit as to what qualifies as an adverse employment action in the context of First Amendment retaliation."  Hook v. Regents of Univ. of Cal., 2010 WL 3529414, at *10 (citing Maestas v. Segura, 416 F.3d 1182, 1188 n.5 (10th Cir. 2005)).  In Maestas v. Segura, the majority noted, in dicta, that "some forms of retaliation may be actionable under the First Amendment while insufficient to support a discrimination claim under Title VII."  416 F.3d at 1188 n.5.  See Baca v. Sklar, 398 F.3d 1210, 1220-21 (10th Cir. 2005)("Although we have never delineated what actions constitute 'adverse employment actions' in the First Amendment context, we have repeatedly concluded that a public employer can violate an employee's First Amendment rights by subjecting an employee to repercussions that would not be actionable under Title VII." (citing Morfin v. Albuquerque Pub. Sch., 906 F.2d 1434, 1437 n.3 (10th Cir. 1990)(rejecting proposition that "only adverse employment decisions, such as termination, suspension, or transfer, in retaliation for constitutionally protected conduct are illegal.  Actions short of an actual or constructive employment decision can in certain circumstances violate the First Amendment.");  Schuler v. City of Boulder, 189 F.3d at 1310 (reprimanding employee, transferring her to another location, and removing job duties from her constitute adverse employment actions in First Amendment context)).  In Couch v. Board of Trustees of Memorial Hospital, the Tenth Circuit, however, "clarified the parameters of First Amendment retaliation protection, explaining that [the Tenth Circuit] consider[s] an employment action to be adverse in the First Amendment retaliation setting if it 'would deter a reasonable person from exercising his First Amendment rights.'"  Hook v. Regents of Univ. of Cal., 2010 WL 3529414, at *10 (quoting Couch v. Bd. of Trs. of Mem'l Hosp., 587 F.3d at 1238).  The Tenth Circuit explained in Hook v. Regents of University of California, that "[t]his test is identical to the test which is applied in Title VII retaliation claims."  Hook v. Regents of Univ. of Cal., 2010 WL 3529414, at *10 (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)).

The Tenth Circuit's former "confusion" may be reconciled with Hook v. Regents of

applies to ADA retaliation claims, see Proctor v. United Parcel Serv., 502 F.3d at 1208 n.4 (citing

Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)); Haynes v. Level 3 Communs, 456

F.3d 1215, 1228 (10th Cir. 2006).

### 1.    Speech Pursuant to Official Duties.

Under Garcetti v. Ceballos, 547 U.S. 410 (2006), and its progeny, a plaintiff must show that

the substance of the speech which forms the basis for the First Amendment claim involves

something that is not part of the plaintiff's official duties and a matter of public concern, and not

merely a complaint involving the plaintiff's own employment.  See Brammer-Hoelter v. Twin Peaks

Charter Acad., 492 F.3d 1192, 1202 (10th Cir. 2007).  In Brammer-Hoelter v. Twin Peaks Charter

Academy, the Tenth Circuit applied the Garcetti analysis to determine whether the employee's First-

-----

University of California by recognizing that Burlington Northern and Santa Fe Ry. Co. v. White
lowered the standard for establishing adverse employment actions in retaliation claims under Title
VII from "activity that affects the terms and conditions of employment," Burlington N. & Santa Fe
Ry. Co. v. White, 548 U.S. at 56, to actions "a reasonable employee would have found . . . materially
adverse, which in this context means it well might have dissuaded a reasonable worker from making
or supporting a charge of discrimination," Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595
F.3d at 1133 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. at 68)(internal quotation
marks omitted).  Other United States Courts of Appeals apply the same standard for establishing
adverse employment action under Title VII and the First Amendment.  See, e.g., Hellman v.
Weisberg, 360 F. App'x 776, 779 (9th Cir 2009)("[T]he test of adverse employment action in the
First Amendment context is substantially similar to the test under Title VII"); Boyd v. Peet, 249 F.
App'x 155, 158 (11th Cir. 2007)("[A] court may apply Title VII standards to First Amendment
retaliation claims." (citing Stavropoulos v. Firestone, 361 F.3d 610, 620 (11th Cir. 2004)); Zelnik
v. Fashion Inst. of Tech., 464 F.3d 217, 227 (2d Cir. 2006)("Our standard for First Amendment
retaliation claims has always been the equivalent to the standard set forth in [Burlington Northern
and Santa Fe Ry. Co. v. White].");  Okruhlik v. Univ. of Ark., 395 F.3d 872, 878 (8th Cir.
2005)(noting the same test applies to both First Amendment and Title VII retaliation cases).  But
see, e.g., Mosely v. Bd. of Educ. of City of Chicago, 434 F.3d 527, 533-34 (7th Cir. 2006)("[P]ublic
employees who allege that their employers retaliated against them based on assertions of First
Amendment rights . . . 'do[] not require an adverse employment action within the meaning of the
antidiscrimination statutes, such as Title VII of the Civil Rights Act of 1964.'" (quoting Spiegla v.
Hull, 371 F.3d 928, 941 (7th Cir .2004)).

Amendment right had been violated.  First, the court must determine whether the employee speaks, "pursuant to her official duties."  493 F.3d at 1202.  "If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech 'simply reflects the exercise of employer control over what the employer itself has commissioned or created.'"  492 F.3d at 1202 (quoting Garcetti v. Ceballos, 547 U.S. at 422).

Cases interpreting Garcetti v. Ceballos have indicated that speech relating to tasks within an employee's uncontested employment responsibilities is not protected from regulation.  This principle may be true even though the speech concerns an unusual aspect of an employee's job that is not part of his everyday functions.  See Battle v. Bd. Of Regents, 468 F.3d 755, 761 n.6 (11th Cir. 2006)(per curium).  In some circumstances, filing a complaint with "an agency outside [a plaintiff's] direct chain of command . . . [i]s not pursuant to official duties, but rather [i]s the speech of a private citizen."  Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d at 1137.  The ultimate question is whether the employee speaks as a citizen or as a government employee -- an individual acting "in his or her professional capacity."

### 2.    Speech about Matters of Public Concern.

Second, if the employee does not speak pursuant to his or her official duties, but instead speaks as a citizen, the court must determine whether the subject of her speech is a matter of public concern.  See Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d at 1202-1203.  "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record."  Connick v. Myers, 461 U.S. 138, 147 (1983)(finding that a terminated assistant district attorney's expressive activity did not involve a matter of public concern where she disseminated a questionnaire to her co-workers

soliciting their views on office morale and dynamics, including whether they felt pressure to work

in political campaigns).

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

Connick v. Myers, 461 U.S. at 147.  "Statements revealing official impropriety usually involve

matters of public concern."  Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d at 1205 (citing

Lighton v. Univ. of Utah, 209 F.3d 1213, 1224 (10th Cir. 2000)).  Conversely, speech that simply

airs "grievances of a purely personal nature" does not involve matters of a public concern.

Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d at 1205 ("In determining whether speech

pertains to a matter of public concern, the court may consider 'the motive of the speaker and whether

the speech is calculated to disclose misconduct or merely deals with personal disputes and

grievances unrelated to the public's interest.'" (quoting Lighton v. Univ. of Utah, 209 F.3d at 1224)).

> The Tenth Circuit in Brammer-Hoelter v. Twin Peaks Charter Academy explained:

> [W]e have held that the following are not matters of public concern: speech regarding grievances about internal departmental affairs, Hom v. Squire, 81 F.3d 969, 974 (10th Cir. 1996), disputes over the term of employment, Lancaster v. Indep. Sch. Dist. No. 5, 149 F.3d 1228, 1233-34 (10th Cir. 1998), and workplace frustration, McEvoy v. Shoemaker, 882 F.2d 463, 466 (10th Cir.1989).

492 F.3d at 1205.

> There is a split among the circuits on the question whether an EEOC complaint can be a

matter of public concern.  Compare Cuter v. McMillan, 308 F. App'x 819, 821 (5th Cir.

2009)("EEOC charges alone are not protected speech."), Short v. City of West Point,125 F.3d 853,

at *1 (5th Cir. 1997)("Lodging a complaint with the EEOC, without further airing of grievances,

creates a private, personal dispute between employer and employee."), and <u>Rice v. Ohio Dep't of Transp.</u>, 887 F.2d 716, 720-21 (6th Cir. 1989)(finding that, because it related only to personal employment dispute, plaintiff's discrimination charge was not entitled to First Amendment protection), <u>vacated on other grounds</u>, 497 U.S. 1001 (1990), <u>with</u> <u>Greenwood v. Ross</u>, 778 F.2d 448, 457 (8th Cir. 1985)("Appellant's filing of an EEOC charge and a civil rights lawsuit are activities protected by the [F]irst [A]mendment.").

The Tenth Circuit has held that, at least in some circumstances, a "[p]aintiff's cannot establish a First Amendment claim for retaliation based on filing an EEOC charge."  <u>Grabow v. Independent Sch. Dist. No. I-008</u>, 86 F.3d 1166, at *4 (10th Cir. 1996)(finding the plaintiffs' EEOC charge "did not relate to a matter of political, social, or other concern to the community, but rather involved only 'matters of internal departmental affairs and personal interest.'" (quoting <u>Hom v. Squire</u>, 81 F.3d at 974 (10th Cir. 1996))).  In <u>David v. City and County of Denver</u>, 101 F.3d 1344 (10th Cir. 1996), the Tenth Circuit affirmed the district court's grant of summary judgment against a police officer who was suspended for tardiness after initiating sexual harassment complaints, including EEOC complaints.  The Tenth Circuit found that the EEOC complaints did not address matters of pubic concern:

> Her allegations focus on the conditions of her own employment, and in neither the EEOC complaints nor the letter to the City Attorney does Officer David allege that other employees have been subjected to harassment or retaliation or that the harassment and retaliation has interfered with the Department's performance of its governmental responsibilities. Therefore, Officer David's statements do not involve matters of public concern under the <u>Connick</u> standard.

101 F.3d at 1356.

## ANALYSIS

The Defendants argue that West has not exhaust her administrative remedies, that she cannot

establish a prima-facie case of discrimination under the ADA, that West cannot show cannot show

that her speech was not made pursuant to her official duties or that it involved a matter of public

concern, and that Salazar enjoys qualified immunity.  West argues that her administrative remedies

are exhausted, and that she was retaliated against in violation of the ADA and the First Amendment.

After carefully reviewing the record and the parties' arguments, the Court finds that West did not

exhaust her administrative remedies for her hostile work environment claim, and failed to establish

a genuine question of material fact whether the Defendants retaliated in violation of the ADA or the

First Amendment.  The Court grants the Defendants' Motion for Summary Judgment with prejudice

on Counts I, II and III of West's Complaint.  The Court remands all remaining claims, which sound

in state-law, to the Third Judicial District Court, Dona Ana County, State of New Mexico.

## I.      WEST FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES FOR SOME CLAIMS AND DISCRETE ACTS.

The Court finds that West failed to exhaust her administrative remedies for her hostile work

environment claim and any ADA claims based on discrete acts other than the Defendants' response

to her request for milage reimbursement.  "It is fundamental law that a plaintiff may not assert a

[discrimination] claim with respect to conduct not first asserted in a discrimination charge filed with

the EEOC."  Holmes v. Utah, Dept. of Workforce Services, 483 F.3d 1057, 1070 (10th Cir. 2007).

Because West did not exhaust her administrative remedies for these claims, the Court lacks subject-

matter jurisdiction to hear them.[19]   Consequently, the Court will dismiss Count II of West's

_____

[19] West argues that the Defendants have waived the argument that she failed to exhaust her administrative remedies, because they first raised it at the August 30, 2010 hearing.  See Plaintiff's Letter/Reply at 1.  In the Tenth Circuit, exhaustion of administrative remedies is a jurisdictional prerequisite to filing an ADA action.  See Jones v. United Parcel Serv., Inc., 502 F.3d at 1183.  The Defendants cannot waive arguments based on the Court's subject matter-jurisdiction.  "[B]ecause exhaustion of remedies is a jurisdictional prerequisite to filing an ADA suit, [defendants] 'may raise

[the] court's lack of subject-matter jurisdiction at any time in the same civil action-even on appeal.'" Andrews v. GEO Group, Inc., 288 F. App'x 514, 518 n.4 (10th Cir. 2008)(citing Jones v. United Parcel Serv., Inc., 502 F.3d at 1183; quoting Mires v. United States, 466 F.3d 1208, 1211 (10th Cir. 2006)(some alterations in original).  See Union Pacific R. Co. v. U.S. ex rel. U.S. Army Corps Of Engineers, 591 F.3d 1311, 1314 n.1 (10th Cir. 2010)("The conduct of the parties cannot confer subject-matter jurisdiction where it is lacking, either as a matter of consent or estoppel.")(quoting Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982)(internal quotation marks omitted)).  "Even if the parties fail to raise the issue of subject matter jurisdiction, the court has the duty to raise and resolve the matter."  Laughlin v. Kmart Corp., 50 F.3d 871, 872 (10th Cir. 1995), cert. denied, 516 U.S. 863 (1995).

West further argues that exhaustion of administrative remedies is not jurisdictional.  For this proposition, West cites language from the Supreme Court in Zipes v. Trans World Airlines, Inc., in which the Supreme Court addressed a "motion to exclude class members who had not filed timely charges with the EEOC."  455 U.S. at 389.  The Supreme Court held that timely exhaustion of administrative remedies is not jurisdictional.  See 455 U.S. at 393 ("[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.").  West's deficiency, however, is not a matter of timeliness, but a complete failure to exhaust her administrative remedies for some of the bases on which she founds her claims.

West argues that the Supreme Court's holding in Zipes v. Trans World Airlines, Inc. applies to exhaustion of administrative remedies generally.  See Plaintiff's Letter/Reply at 3.  In support of her argument, she quotes the following language:

> If the timely-filing requirement were to limit the jurisdiction of the District Court to those claimants who have filed timely charges with the EEOC, the District Courts in Franks [v. Bowman Transportation Co., 424 U.S. 747 (1976)] and Albemarle Paper Co. v. Moody, 422 U.S. 405 (1975), would have been without jurisdiction to adjudicate the claims of those who had not filed as well as without jurisdiction to award them seniority.  We did not so hold.  Furthermore, we noted that Congress had approved the Court of Appeals cases that awarded relief to class members who had not exhausted administrative remedies before the EEOC.  It is evident that in doing so, Congress necessarily adopted the view that the provision for filing charges with the EEOC should not be construed to erect a jurisdictional prerequisite to suit in the district court.

Zipes v. Trans World Airlines, Inc., 455 U.S. at 397 (emphasis added).  West pushes this language too far.  The Supreme Court addressed only the question of timely filing requirements for absent class members, and, in both cases that the Supreme Court cited, the class representatives had filed EEOC complaints.  See Franks v. Bowman Transportation Co., 424 U.S. at 1258 n.4; Albemarle Paper Co. v. Moody, 422 U.S. at 408.  Immediately before the quoted language, the Court explained the significance of the cases and what Congress approved, stating: "This justification for denying class-based relief in Title VII suits has been unanimously rejected by the courts of appeals, and

Congress ratified that construction by the 1972 amendments."  455 U.S. at 396 (emphasis added).
It makes little sense that the Supreme Court would spend pages addressing the smaller argument of
timeliness in class actions, before rejecting the exhaustion of administrative remedies as a
jurisdictional requirement wholesale in dicta in one sentence, overruling at least one other case in
the process.

The Tenth Circuit has rejected a similar interpretation of Zipes v. Trans World Airlines, Inc.
In Hawkins v. Defense Logistics Agency of the Dept. of Defense, 99 F.3d 1149 (10th Cir. 1996),
the Tenth Circuit affirmed the district court's dismissal of the plaintiff's case for lack of subject-
matter jurisdiction because he failed to exhaust his administrative remedies.  99 F.3d 1149, at *1.

> Plaintiff's reliance on Zipes v. Trans World Airlines, Inc., for a contrary,
> nonjurisdictional characterization of administrative exhaustion is misplaced.  Zipes
> held only that the timeliness requirement for administration charges is, like a statute
> of limitations, subject to such equitable exceptions as waiver, estoppel, and tolling.
> Id. at 393.  That holding does not undercut this court's exhaustion rule -- adhered to
> before and after Zipes -- that the administrative process must still be pursued before
> jurisdiction in federal court can be invoked.  Accord Davis v. North Carolina Dep't
> of Correction, 48 F.3d 134, 140 (4th Cir. 1995); Bullard v. Sercon Corp., 846 F.2d
> 463, 468 (7th Cir. 1988); Worrell v. Uniforms To You & Co., 673 F. Supp. 1461,
> 1462-63 (N.D. Cal.1987).

Hawkins v. Defense Logistics Agency of the Dept. of Defense, 99 F.3d 1149, at *1 n.1.

In Berger v. Iron Workers Reinforced Rodmen Local 201, 843 F.2d 1395 (D.C. Cir. 1988),
the United States Court of Appeals for the D.C. Circuit similarly rejected a plaintiffs' argument that,
"even if a charge was not filed and a right to sue letter was not issued, the District Court could
properly entertain the case."  843 F.2d at 1434.  Like West, the plaintiffs in Berger v. Iron Workers
Reinforced Rodmen Local 201 based their argument on the Supreme Court's statement: "[T]he
provision for filing charges with the EEOC should not be construed to erect a jurisdictional
prerequisite to a suit in the district court."  Zipes v. Trans World Airlines, Inc., 455 U.S. at 397.  The
D.C. Circuit rejected the plaintiffs' argument, stating:

> This statement cannot be used, however, to read out of the statute the administrative
> procedures with which a prospective plaintiff must comply. . . .  Zipes suggests
> nothing to the contrary.  There, the question confronting the Court was not whether
> a plaintiff can simply disregard the administrative procedures facially made a
> prerequisite to suit under Title VII; to state that question is to answer it.  Instead,
> Zipes raised the much narrower question "whether the statutory time limit for filing
> charges under Title VII . . . is a jurisdictional prerequisite to suit in the District
> Court." Zipes, 455 U.S. at 387.  The Court held that this time limit was, "like a
> statute of limitations, . . . subject to waiver, estoppel, and equitable tolling." Id. at
> 393.

Complaint and will not consider the Defendants' response to her request for a part-time schedule as a basis for liability under her ADA retaliation claim.[20]

## A.   WEST FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES FOR HER HOSTILE WORK ENVIRONMENT CLAIM.

West did not present a hostile work environment claim in her EEOC Charge, either in name or in substance -- her EEOC Charge complains of a single event on a single day.  West argues that there is no "hostile work environment" box and that she checked any applicable boxes.  Plaintiff's Letter/Reply at 1-2.  She further argues that, because failing to check a particular box would establish a rebuttable presumption that she did not exhaust a claim, she has overcome any such presumption by writing in the narrative section: "I am being harassed by the burdensome request

---

Berger v. Iron Workers Reinforced Rodmen Local 201, 843 F.2d at 1434.  See Kizas v. Webster, 707 F.2d 524, 546 (D.C. Cir. 1983)("But nothing in Zipes suggests that parties complaining of federal employment discrimination in violation of Title VII should ever be waived into court without filing any initial charge with the agency whose practice is challenged.").

Notwithstanding the language in Zipes v. Trans World Airlines, Inc., the Tenth Circuit has repeatedly held that the "exhaustion of administrative remedies is a jurisdictional prerequisite to filing an ADA action."  Lara v. Unified Sch. Dist. # 501, 350 F. App'x 280, 285 (10th Cir. 2009)(citing Jones v. United Parcel Serv., Inc., 502 F.3d at 1183).  See Andrews v. GEO Group, Inc., 288 F. App'x at 518 n.4("[E]xhaustion of remedies is a jurisdictional prerequisite to filing an ADA suit" (citation omitted)).  See also Alcivar v. Wynne, 268 F. App'x 753 ("The Tenth Circuit has consistently held that 'exhaustion . . . is a jurisdictional prerequisite to suit under Title VII -- not merely a condition precedent to suit.'")(quoting Shikles v. Sprint/United Mgmt. Co., 426 F.3d at 1317); Ransom v. U.S. Postal Service, 170 F. App'x at 527 & n.2 ("[A] claimant under the Rehabilitation Act . . . is required to present her claims to the appropriate EEO agency before filing suit.")(citing 5 U.S.C. § 7702(a)(2); Wells v. Shalala, 228 F.3d at 1142-43); Jones v. Runyon, 91 F.3d at 1399 ("Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII."); Romero v. Union Pac. R.R., 615 F.2d at 1303.  The Court, therefore, rejects reading of the language in Zipes v. Trans World Airlines, Inc.

[20] Failing to exhaust administrative remedies does not, however, "bar an employee from using the prior acts as background evidence in support of a timely claim."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 113.

to produce clarifying documentation from my physician within five working days."  Plaintiff's Letter/Reply at 1 (quoting EEOC Charge).

To bring a hostile work environment claim before this Court, West must have first presented the claim to the EEOC.  "A failure to file an administrative . . . claim before bringing suit is jurisdictionally fatal."  <u>Mitchell v. City and County of Denver</u>, 112 F. App'x 662, 666 (10th Cir. 2004).  The Court must determine if a hostile work environment claim "can reasonably be expected to follow the charge of discrimination submitted to the EEOC."  <u>MacKenzie v. City & County of Denver</u>, 414 F.3d at 1274.  "We liberally construe charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim."  <u>Jones v. United Parcel Serv., Inc.</u>, 502 F.3d at 1186.  "This more lenient pleading standard contemplates the fact that administrative charges of unlawful employment practices are regularly filled out by employees who do not have the benefit of counsel."  <u>Mitchell v. City and County of Denver</u>, 112 F. App'x at 667.[21]  "[T]he charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim."  <u>Jones v. United Parcel Serv., Inc.</u>, 502 F.3d at 1186.  The Court's review of West's EEOC Charge reveals, however, that West did not present any information that could reasonably be expected to lead the EEOC to investigate a hostile work environment claim.

In <u>Mitchell v. City and County of Denver</u>, the Tenth Circuit rejected a plaintiff's contention that "his EEOC filing c[ould] be fairly construed to include a hostile work environment/racial harassment claim, and therefore, all allegations in his civil suit [we]re deemed included in his

---

[21] It is unclear if West had help from counsel completing her EEOC Charge.  Some of the language she uses suggests legal sophistication.  <u>See</u> EEOC Charge ¶ 3, at 1 ("I believe I have been retaliated [sic] as described above, because I filed a previous charge of discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended.").  The "as amended" language suggests a lawyer wrote the sentence.  Regardless, the Court construes West's EEOC Charge liberally.

administrative charge."  112 F. App'x at 667.  The Tenth Circuit looked to the language of the

EEOC charge to determine whether a hostile work environment claim could "reasonably be expected

to grow out of the charge that was made."  112 F. App'x at 667.

> To determine whether the hostile work environment claim is reasonably related to
> the administrative charge, we look first to the language of the charge itself. . . .  The
> form contains several sections with boxes that may be checked or blanks that may
> be filled in by the complainant.  In the section titled "Cause of Discrimination,"
> Mitchell checked the boxes marked "race" and "retaliation."  In the section titled
> "Date of Discrimination," he checked the box marked "continuing action."
> However, in that same section, he filled in the blanks marked "earliest date" of
> discrimination and the "latest date" of discrimination with the same date, September
> 4,1996.  In the section provided for his statement of "Personal Harm," Mitchell
> stated: "on or about August 4, 1996, and continuing" Denver Water "fail[ed] to
> promote me . . . because of my race/African American . . . and in retaliation for
> engaging in protected activity."  He supported this claim in his "Discrimination
> Statement," alleging: (1) he had always been a "satisfactory to above-satisfactory"
> employee, (2) three Caucasian males with less seniority and experience had been
> promoted in the last six months, (3) throughout this period he had consistently
> complained to his superiors regarding what he perceived to be discriminatory
> treatment, (4) he had filed a previous charge of discrimination around 1986, (5) Funk
> allegedly stated, "this nigger . . . ain't going anywhere as long as he works for me,"
> and (6) he remained employed "at a lesser step than he should be."  Finally, he
> requested relief in the form of a promotion to Inspector II-Step 9, back pay and
> benefits, and compensatory and punitive damages.

112 F. App'x at 667.

Reading the EEOC charge liberally, the Tenth Circuit concluded that "the investigation of

[the plaintiff's] 'failure to promote' claim could not reasonably be expected to lead to a hostile work

environment/racial harassment claim."  112 F. App'x at 667.  The Tenth Circuit explained that the

plaintiff did not "simply neglect[] to attach a legal label to his underlying factual allegations"; rather,

"[n]othing in Mitchell's EEOC complaint indicates a hostile work environment."  112 F. App'x at

667-68.  The plaintiff failed to "allege facts indicating a workplace 'permeated with discriminatory

intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the

victim's employment and create an abusive working environment.'" 112 F. App'x at 668 (quoting

Davis v. United States Postal Serv., 142 F.3d at 1341).

By the same measure, West's EEOC Charge can "not reasonably be expected to lead to a

hostile work environment . . . claim." 112 F. App'x at 667. West is correct that there is no box

labeled "hostile work environment" on the EEOC Charge. West's failure, however, goes beyond

failing to check a box: she did not complain of a hostile work environment in name or substance.

West checked the boxes labeled "retaliation" and "disability" in her EEOC Charge. Under

"date(s) discrimination took place," West wrote the "earliest" was March 27, 2007, and the "latest"

March 27, 2007, and checked the box labeled "continuing action." In the narrative section, West

wrote:

> I. On or about March 29, 2008, I received a letter from Patricia Jauregui, Supervisor
> HR Bureau Team B, requesting that I obtain clarification from my physician
> regarding my inability to travel long distances and why traveling in my own vehicle
> would be acceptable. I provided this explanation to them when I requested the
> vehicle accommodation on October 10, 2007. HRB received the physician's
> statement directly from the physician. I am being harassed by the burdensome
> request to produce clarifying documentation from my physician within five working
> days, when HRB had my request for accommodation since October 2007.
>
> II. No legitimate reason given for the above, but I believe I am being harassed
> because I filed a charge of discrimination (453-2008-00310) due to fact they failed
> to provide me with a reasonable accommodation to my disability.
>
> III. I believe I have been retaliated [sic] as described above, because I filed a
> previous charge of discrimination, in violation of Title VII of the Civil Rights Act
> of 1964, as amended.

West's EEOC Charge provides less of a basis for establishing a hostile work environment claim than

the charge the Tenth Circuit addressed in Mitchell v. City and County of Denver. Mitchell's charge

also specified a date range on one day, but the narrative complained of a variety of events over a

period of time. West complains, however, of a single event on a single day -- a request for

additional information.  See EEOC Charge at 1.

West argues that she stated a hostile work environment claim by stating: "I am being harassed by the burdensome request to produce clarifying documentation from my physician within five working days."  Plaintiff's Letter/Reply at 1 (quoting EEOC Charge).  West's use of the term "harassed," however, does not save her.  The Tenth Circuit distinguishes between harassment and a hostile work environment.  See Holmes v. Utah, Dept. of Workforce Services, 483 F.3d at 1062-63 (distinguishing between harassment and hostile work environment claims when finding an employee failed to exhaust administrative remedies).  Moreover, the statement West contends establishes a hostile work environment claim proclaims her argument's defeat.  In her statement that she was "being harassed by the burdensome request to produce clarifying documentation from my physician," West complains of a single event on a single day.  Moreover, the single event was a request for additional information, but "that one event does not rise to the severity necessary to constitute a hostile work environment."  Gadsden v. Bernstein Litowitz Berger & Grossman, 323 F. App'x 59, 60-61 (2d Cir. 2009)(citing Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002)(addressing a discriminatory remark);[22] House v. State of Washington, 216 F.3d 1083, at *1 (9th Cir. 2000)("[T]he court properly granted summary judgment on House's claim of hostile work environment because it was based on only one event . . . and that event does not establish a pattern

---

[22] The United States Court of Appeals for the Second Circuit has established that a single event can create a hostile work environment if the single event is "extraordinarily severe," a "'single incident of rape,' for example."  Mathirampuzha v. Potter, 548 F.3d 70, 78-79 (2d Cir. 2000)(quoting Howley v. Town of Stratford, 217 F.3d 141, 153 (2d Cir. 2000).  The standard requires that "the incident constitute an 'intolerable alteration' of the plaintiff's working conditions, so as to substantially interfere with or impair his ability to do his job."  Mathirampuzha v. Potter, 548 F.3d at 78-79.  A request for additional information would not meet this standard.

or practice of discriminatory conduct severe enough to alter the conditions of her employment."). The Court fails to see how a single request for additional information can amount to a hostile work environment "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Davis v. U.S. Postal Serv., 142 F.3d at 1341(quotations omitted). Nor can a complaint about a single request for additional information reasonably lead the EEOC to investigate whether West worked in a hostile environment.

The Court finds West failed to exhaust her administrative remedies for her hostile work environment claim, because she did not present the claim to the EEOC. The exhaustion of administrative remedies is a jurisdictional prerequisite to bringing suit, and the Court lacks subject-matter jurisdiction over West's hostile work environment claim. Consequently, the Court dismisses Count II of West's Compliant, her hostile work environment claim.

**B.   WEST FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES RELATING TO HER REQUEST FOR A PART-TIME SCHEDULE AND HER SUPERVISOR'S FORGETFULNESS.**

Because West did not exhaust her hostile work environment claim, she must exhaust each discrete act of discrimination on which she bases her surviving ADA claim for retaliation.[23]

---

[23] West argues: "When an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC." Plaintiff's Letter/Reply at 2 (quoting Ingels v. Thiokol Corp., 42 F.3d 616, 625 (10th Cir. 1994)). This statement of law reflects the old law under the continuing-violation theory, and has been abrogated by National Railroad Passenger Corp. v. Morgan, and Martinez v. Potter. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 109 ("Title 42 U.S.C. § 2000e-5(e)(1) is a charge filing provision that 'specifies with precision' the prerequisites that a plaintiff must satisfy before filing suit. An individual must file a charge within the statutory time period and serve notice upon the person against whom the charge is made." (citations omitted)). In Martinez v. Potter, the Tenth Circuit stated:

"Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.  Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 114.  In National Railroad Passenger Corp. v. Morgan, this rule applied to bar a plaintiff from suing on claims for which no administrative remedy had been sought when those incidents complained of occurred more than 300 days before the filing of Plaintiff's EEO complaint.  See Martinez v. Potter, 347 F.3d at 1210.  "The rule is equally applicable, however, to discrete claims based on incidents occurring after the filing of Plaintiff's EEO complaint."  Martinez v. Potter, 347 F.3d at 1210-11.

Construing West's EEOC Charge liberally, however, the Court finds that she only administratively exhausted her claim that the Defendants discriminated against her based on her request to be reimbursed for driving her personal vehicle.  West's EEOC Charge references only that West "received a letter from Patricia Jauregui, Supervisor HR Bureau Team B, requesting that

---

The district court held that [the plaintiff's allegations] could not proceed because they were not like or reasonably related to the allegations in Mr. Martinez's EEO complaint, and Mr. Martinez had failed to exhaust administrative remedies. . . . [T]he district court relied on our holdings . . . .  Those cases explain that "[w]hen an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC."  Although we agree with the district court that these claims were not properly before it, the Supreme Court's recent pronouncement in National Railroad Passenger Corp. v. Morgan has effected fundamental changes to the doctrine allowing administratively unexhausted claims in Title VII actions. . . .  Morgan abrogates the continuing violation doctrine as previously applied to claims of discriminatory or retaliatory actions by employers, and replaces it with the teaching that each discrete incident of such treatment constitutes its own "unlawful employment practice" for which administrative remedies must be exhausted.

Martinez v. Potter, 347 F.3d at 1210 (citations omitted).  Thus, West relies on a statement of law that has been abrogated.  It is not enough that her unexhausted claims are "related to" her EEOC Charge.

[West] obtain clarification from my physician regarding [West's] inability to travel long distances and why traveling in [West's] own vehicle would be acceptable." Construing West's EEOC Charge liberally, the Court finds this statement would reasonably lead the EEOC to investigate the Defendants' response to West's request for milage reimbursement, culminating with the Defendants' April 8, 2008 letter advising West that she would be permitted to use her personal vehicle on a case-by-case basis. See Letter from Patricia Juaregui to Ulrike West at 16 (dated April 8, 2008).

West's EEOC charge would not, however, reasonably lead the EEOC to investigate the other discrete incidents on which West founds her retaliation claims, namely the Defendants' Response to her request for a part-time schedule and Chowning's forgetting to approve West's request for leave, forward information to West, and to call West for meetings. Chowning was not involved in approving West's milage reimbursement request, which Juaregui handled, and Salazar approved -- and West does not contend that Chowning's forgetfulness played a role in the Defendants' response to her milage reimbursement request. See Defendants' Response ¶ 5, at 5. Consequently, Chowning's forgetfulness is a discrete act which West must exhaust -- which West failed to do.

Additionally, West did not exhaust her claims based on her request for a part-time schedule, because she made the request months after filing her EEOC Charge. Discrete acts subsequent to the filing of an EEOC charge are not administratively exhausted. See Martinez v. Potter, 347 F.3d at 1210. Consequently, acts that occur subsequent to the filing of the formal EEOC charge would not be included in the scope of the administrative investigation and would constitute its own "unlawful employment practice for which administrative remedies must be exhausted." Farley v. Leavitt, No. CIV 05-1219 JB/LFC, 2007 WL 6364329, at *14 (D.N.M. Declaratory. 31, 2007)(Browning, J.)(quoting Jones v. United Parcel Serv., Inc., 502 F.3d at 1186). See Duncan v. Manager

Department of Safety, 397 F.3d at 1314 (affirming dismissal of retaliation claim based on acts postdating the plaintiff's EEO complaint where plaintiff did not file a separate charge detailing retaliatory act); Annett v. University of Kansas, 371 F.3d at 1238 (noting the exception permitting the employee to sue on acts of discrimination post-EEOC charge is no longer viable for discrete discrimination claims).

West's request that the Defendants adjust her schedule months after filing her EEOC Charge was a discrete act that must be independently administratively exhausted. West filed her EEOC Charge on April 3, 2008. More then three months later, on July 29, 2008, West requested that her position be converted to a permanent, part-time position, and that she only work five hours a day for five days a week. See Part-Time Schedule Request at 1. West's EEOC Charge does not "contain facts concerning the discriminatory and retaliatory actions underlying" her claim, other than reference to the Defendants' response to her request for milage reimbursement. Jones v. United Parcel Serv., Inc., 502 F.3d at 1186. The Court lacks subject-matter jurisdiction over her claims founded on the Defendants' response to her part-time schedule request and her supervisor's forgetfulness.

Even if West had complained of a hostile work environment in her EEOC Charge, she still would have failed to exhaust her administrative remedies for her claims based on requesting a part-time schedule because the Defendants' responses to the two requests are not part of the same employment action. In National Railroad Passenger Corp. v. Morgan, the Supreme Court provided three factors courts consider to determine "if a series of separate acts . . . collectively constitute one 'unlawful employment practice.'" 536 U.S. at 117 (quoting 42 U.S.C. § 2000e-5(e)(1)). "[A] series of alleged events comprises the same hostile environment where 'the pre- and post-limitations period

incidents involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers.'" Duncan v. Manager, Dep't of Safety, City & Co. of Denver, 397 F.3d at 1309 (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 120).  In Duncan v. Manager, Depart of Safety, City & Co. of Denver, the Tenth Circuit addressed a plaintiff's hostile work environment claim, applying National Railroad Passenger Corp. v. Morgan.  The Tenth Circuit "examin[ed] the acts in the filing period and determin[ed] what acts outside of the filing period [we]re related by type, frequency, and perpetrator.  The entire range of related acts constitute[d] the hostile work environment underlying Ms. Duncan's claim." 397 F.3d at 1309.  It is not enough that "acts may have a temporal relation" if "they are of a different character, they took place while . . . on a different assignment, and they were not perpetrated by the same people."  397 F.3d at 1310.

In Duncan v. Manager, Depart of Safety, City & Co. of Denver, the Tenth Circuit found that the spreading of rumors, placing an anonymous magazine article in the plaintiff's box, and the theft of a notebook by an unknown perpetrator were not the same type of actions as an anonymous letter threatening physical violence and the adjustment of the plaintiff's score on the sergeant's exam.  See 397 F.3d at 1309.  The Tenth Circuit explained that, "[w]hile these acts may have a temporal relation, . . . they are of a different character, they took place while [the plaintiff] was on a different assignment, and they were not perpetrated by the same people."   397 F.3d at 1310.

The Defendants' response to West's request for a part-time schedule and their response to her request for milage reimbursement does not "constitute one 'unlawful employment practice.'" Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 117 (quoting 42 U.S.C. § 2000e-5(e)(1)). Different managers handled the requests -- Salazar handled West's part-time schedule request while Jauregui handled her mileage reimbursement request.  See Jauregui Aff. ¶ 11, at 3; Salazar Aff. ¶

-64-

7, 11, at 3, 4.  The Defendants' responses were not "the same type of employment actions," and the Defendants did not address West's requests to work a part-time schedule "relatively frequently." Duncan v. Manager, Dep't of Safety, City & Co. of Denver, 397 F.3d at 1309 (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 120).  First, allowing West to temporarily work a part-time schedule less a month and a half after her request is not of the same character as deciding to review her requests for milage reimbursement on a case-by-case basis six months after her request.  At most, both decisions involve delay, but even the reason for the delay was of a different character: the Defendants were delayed in responding to West's request for milage reimbursement because the doctor failed to respond to the Defendants' repeated requests for clarification, while the delay in responding to West's request for a part-time schedule appears to be purely administrative.  Second, West's requests for milage reimbursement and a part-time schedule were isolated incidents that did not repeat, and, consequently, so were the Defendants' response to her requests.  Only once did the Defendants allow West to work a part-time schedule on a temporary basis, and only once did the Defendants inform West that they would review her milage reimbursement requests on a case-by-case basis.

Similarly, West's supervisor's forgetfulness was not the same type of action as the Defendants' response to her mileage reimbursement request.  The actions were made by different managers -- Chowning and Salazar.  Moreover, forgetting to call West for meetings, forward information to her, and approve her leave is a different type of action than approving milage reimbursement on a case-by-case basis, and Chowning's forgetfulness was limited to a handful of incidents. Consequently, even if West had exhausted her hostile work environment claim, under Duncan v. Manager, Depart of Safety, City & Co. of Denver, West has not established that the

-65-

Defendants' responses to her part-time schedule request and Chowning's forgetfulness "are part of the same hostile work environment," as the Defendants' response to her milage reimbursement request.  397 F.3d at 1309.  Because West did not exhaust her administrative remedies for the discrete acts of the Defendants' response to her request for a part-time schedule and Chowning's forgetfulness, the Court does not have subject-matter jurisdiction over those matters.  Furthermore, even if West had exhausted her hostile work environment claims, the Court would not have subject-matter jurisdiction over those acts because they are not part of the same action as the events West complained of in the EEOC Charge.

### C.    WEST FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES FOR OR PLEAD A FAILURE-TO-ACCOMMODATE CLAIM.

West contends for the first time, in a footnote to the Plaintiff's Letter/Reply, that she makes a failure-to-accommodate claim.  West, however, neither administratively exhausted nor pled a failure-to-accommodate claim.  Consequently, this claim is not properly before the Court, and it is dismissed.[24]

In Atkins v. Southwestern Bell Co., 137 F. App'x 115 (10th Cir. 2005), the Tenth Circuit held that Atkins failed to exhaust her retaliation claim by not including the claim in her formal charge filed with the EEOC.  See 137 F. App'x at 118.  Atkins provided the EEOC with an intake questionnaire and a sworn supporting affidavit before submitting her formal charge.  See 137 F. App'x at 118.  The Tenth Circuit stated, even "assuming for purposes of this appeal that Plaintiff's intake questionnaire and sworn supporting affidavit could be deemed the equivalent of a formal

---

[24] West previously filed an EEOC Charge alleging the Defendants failed to accommodate her disability.  West released all of her claims against the Defendants relating to that EEOC Charge, and these claims are not before the Court.  See Settlement Agreement at 2.

charge," because "[p]laintiff's formal charge . . . did not include any indication that she wished to pursue a retaliation claim or describe any facts that would support such a claim," she had not exhausted her administrative remedies.  137 F. App'x at 118.  The Tenth Circuit held that the omission of such claims in the later-filed formal charge indicated that Atkins had abandoned this claim. See 137 F. App'x at 118.  Thus, the Tenth Circuit held that Atkins had not exhausted her administrative remedies.  See id.

Similarly, West seeks to bring a claim that was not in her EEOC Charge.  West's EEOC Charge complains only of retaliation.  Each of the three paragraphs in West's EEOC Charge complain only of retaliation based on her prior failure-to-accommodate charge.  An examination of West's December 11, 2007 EEOC charge reveals, however, that she knows how to state a failure-to-accommodate claim:

> I. On or about March 13, 2007, I requested ergonomic office furniture to accommodate my disability, to my supervisor, Heidi Chowning.  On or about July 3, 2007, a workplace assessment was done, as of this date, still no accommodations. I was forced to go on Workers' Compensation because the lack of adequate furniture caused me excruciating pain and constant flare ups.  I have complained to my supervisors, but nothing has been done.  New office furniture was ordered and delivered within the department, but no ergonomic furniture for me.
>
> II. No legitimate reasons given for not providing me with a reasonable accommodation.
>
> III. I believe I have been discriminated against as described above, when I was denied a reasonable accommodation to my disability, in violation of the Americans with Disabilities Act of 1990 (ADA).

Furthermore, West does not plead a failure-to-accommodate claim, in name or substance, in her Complaint.  She brings two counts under the ADA -- for retaliation and hostile work

environment.[25]  In Count I, West alleges that TRD retaliated against her for having filed a charge

of discrimination against TRD with the EEOC in violation of the ADA.  In Count II, West also

brings a hostile work environment claim under the ADA, alleging that the"retaliation adversely

affected the terms, conditions and privileges of employment enjoyed by Plaintiff."  Complaint ¶ 35,

at 6.  At the hearing, the Court asked Mr. Gayle-Smith how many ADA claims West brought, and

he represented she brought two claims, a retaliation claim and a hostile work environment claim.

See Tr. at 24:6-13 (Court, Gayle-Smith); id. at 25:22-26:1 (Court, Gayle-Smith).  Because she

neither exhausted nor pled a failure-to-accommodate claim, her claim is not properly before the

Court, and the Court lacks subject-matter jurisdiction over this claim.  Consequently, the Court

dismisses West's failure-to-accommodate claim.[26]

---

[25] West criticizes the Defendants for failing to grasp her claims:

> Defendants seem unwilling or incapable of acknowledging the distinction between Plaintiff's "free-standing" hostile work environment claim (which may or may not have been motivated by retaliation), Plaintiff's failure to accommodate claim (which may or may not have been motivated by retaliation) and Plaintiff's claim of retaliation (which is evidenced by the harassment, failure to accommodate, and involuntary termination).

Plaintiff's Letter/Reply at 4 n.1.  The Court shares the Defendants' confusion.  West's claims seem to multiply with each filing.  The Complaint, however, includes only two claims under the ADA -- for retaliation and hostile work environment -- and only the retaliation claim was administratively exhausted.

[26] The Court concludes that the Defendants accommodated West's disability, not because this determination addresses West's failure-to-accommodate claim, but because accommodating West's disability demonstrates that the Defendants' responses to her requests for accommodation were not adverse employment action.  Accordingly, while the Court lacks subject-matter jurisdiction to decide West's failure-to-accommodate claim, and the Court will not make any determination on that claim, the Court cannot help but note that, even if the Court had jurisdiction over the claim, it would likely fail for some of the same reasons that the First Amendment and ADA retaliation claims fail.

## II. WEST CANNOT ESTABLISH A FIRST-AMENDMENT RETALIATION CLAIM OR A PRIMA-FACIE CASE OF EMPLOYMENT DISCRIMINATION BECAUSE SHE CANNOT SHOW THAT SHE WAS SUBJECTED TO A MATERIALLY ADVERSE EMPLOYMENT ACTION.

West has presented no direct evidence of retaliation.  "Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption."  Hall v. U.S. Dep't of Labor, 476 F.3d at 854.  In the absence of direct evidence, West must present circumstantial evidence of retaliation under the burden-shifting analysis that the Supreme Court established in McDonnell Douglas Corp. v. Green.  See Anderson v. Coors Brewing Co., 181 F.3d at 1178 (asserting that the McDonnell Douglas Corp. v. Green framework applies to ADA retaliation claims)(citing Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)).  To establish a prima-facie case of retaliation, West must show: "(1) that [she] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."  Proctor v. United Parcel Serv., 502 F.3d 1200, 1208 (10th Cir 2007) (quoting Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d at 1202).

To establish a genuine question of material fact whether the Defendants retaliated against her under the ADA or the First Amendment, West must show that the Defendants subjected her to a materially adverse employment action.[27]  See Hook v. Regents of Univ. of Cal., 2010 WL

---

[27] West invites the Court to apply the more demanding standard of establishing a tangible employment action.  See Plaintiff's Letter/Reply at 3-4.  "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1998).  The Tenth Circuit does not apply such a demanding standard to all discrimination claims.  See Couture v. Belle Bonfils Memorial Blood Center, 151 F. App'x 685, 690-91 (10th Cir. 2005)("[W]e reiterated our policy of 'liberally defin[ing]' the phrase 'adverse employment action,' and indicated it is not necessarily limited to a

3529414, at *10 ("Implicit within this five-prong analysis is a requirement that the public employer have taken some adverse employment action against the employee." (citation and internal quotation marks omitted)); Proctor v. United Parcel Serv., 502 F.3d at 1208 ("In order to establish a prima facie case of retaliation, [a plaintiff] must show . . . that a reasonable employee would have found the challenged action materially adverse . . . ." (citation and internal quotation marks omitted)). The Tenth Circuit recently announced that the standard for establishing adverse employment actions under Title VII -- and thereby the ADA -- also applies to establishing adverse employment action for First-Amendment retaliation claims. See Hook v. Regents of Univ. of Cal., 2010 WL 3529414, at *10 ("[The Tenth Circuit] consider[s] an employment action to be adverse in the First-Amendment retaliation setting if it 'would deter a reasonable person from exercising his First Amendment rights'"; "[t]his test is identical to the test which is applied in Title VII retaliation claims." (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53; Couch v. Bd. of Trs. of Mem'l Hosp., 587 F.3d at 1238)); Proctor v. United Parcel Serv., 502 F.3d at 1208 n.4 ("Because the ADA's anti-retaliation provision contains essentially the same language as Title VII's provision, White applies in the ADA context as well." (citing 42 U.S.C. § 12203(a); 42 U.S.C. § 2000e-3(a); Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53)).

     Consequently, the Court's adverse-employment-action analysis applies to West's Count I (ADA retaliation) and Count III (First Amendment discrimination). The only factual basis on which

---

'tangible employment action' such as 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" (quoting Hillig v. Rumsfeld, 381 F.3d at 1031)). In Burlington Northern and Santa Fe Ry. Co. v. White, the Supreme Court limited application of the tangible employment action standard to a class of hostile work environment cases in which employers are held strictly liable for the actions of supervisors. See 548 U.S. 64-65. Because West fails to establish the less demanding adverse employment action, she cannot establish a tangible employment action.

West founds her ADA retaliation claim for which she also exhausted her administrative remedies is the Defendants' response to her request for milage reimbursement.  Unlike her claims under the ADA, there is no administrative procedure West must exhaust before bringing her First-Amendment retaliation claim.  As a result, the Court's analysis whether the Defendants response to West's request for milage reimbursement amounts to an adverse employment action applies to both claims, but the Court analyzes the other actions West contends were adverse only for the purposes of evaluating the viability of her First-Amendment retaliation claim.  Regardless, the Court concludes that none of the Defendants' actions amount to a materially adverse employment action.

The Defendants contend that West is incorrect whether her requests for accommodations were -- as a factual matter -- denied.  They argue that her request for mileage reimbursement was granted on a case-by-case basis and that her request for a part-time schedule was granted on a temporary basis, subject to renewal.  The Defendants also assert that, under the Tenth Circuit's standard for establishing an adverse employment action, West cannot make the required showing that the Defendants' actions were materially adverse.

West responds that, by offering only to review West's requests to use her personal vehicle on a case-by-case basis, the Defendants denied her request.  West cites no legal authority for this proposition.[28]  West appears to argue that the Defendants denied her request for a part-time schedule, but her argument is confused.  West argues that she "never requested a part-time schedule."

---

[28] Instead, West asserts: "Well even a child would know that saying one needs to ask each and every time one needs to do something is not an accommodation of one's disability at all." Plaintiffs Response at 14.  The additional clarifying information West presented from her health care provider, however, offered multiple ways TRD could accommodate West's travel needs.  West traveled only a few times a year.  The Court concludes it is reasonable in such circumstances to determine on a case-by-case basis which of the proposed methods to use.

Plaintiff's Response ¶ 7, at 6.  She argues, instead, that she requested twenty hours of leave without pay a week.  West, however, is arguing semantics and not substance, and a request for twenty hours leave without pay every week is a request for a part-time schedule.  Moreover, West requested "20 hours of leave without pay per week," Part-Time Schedule Request at 1, and the Defendants offered her a twenty-hour-a-week schedule with "[t]he remaining normally scheduled hours will be coded LWOP [(leave without pay)]."  Letter from Salazar to West at 12 (dated September 15, 2008). Consequently, whatever difference may exist between a part-time schedule and twenty hours leave without pay is immaterial in the facts before the Court.  While the Court can imagine some differences between part-time work and leave without pay in some situations -- differences in benefits, domestic leave, seniority -- here, West was not going to be paid for the twenty hours regardless of whose arrangement was accepted, and West places nothing in the record explaining how either arrangement would differ in benefits, seniority, or any other way.

West further argues that she did not request a part-time schedule on a permanent basis. West's assertion suggests that, by granting West twenty hours a week of leave without pay on a temporary basis, the Defendants granted West's request for a temporary part-time schedule.  See Letter from Salazar to West at 12 (dated September 15, 2008)("You may work part-time with four five hour days per week for the next three months.").  The most charitable interpretation of West's argument is that it parallels her argument about the Defendants' response to her request for milage reimbursement: that the Defendants should not have required her to renew her requests.[29]  West's

---

[29] West's Deposition supports this reading of her argument:

[Maynes:] You were requesting a permanent part-time job, and in response Mr. Salazar said, "No, but for three months we can continue the part-time schedule." correct?

final basis for arguing the Defendants retaliated against her is that Chowning forgot to approve West's request for leave, forward information to West, and to call West for meetings.  The Court finds, however, that the Defendants' actions do not amount to an adverse employment action.

Under the legal standards that the Tenth Circuit announced, West's First Amendment and ADA retaliation claims fails for proof of an essential element; she cannot prove that she suffered an adverse employment action.  On this record, the Defendants are entitled to summary judgment dismissing West's claims for Counts I and III for retaliation.

### A.   AS A FACTUAL MATTER, THE DEFENDANTS GRANTED WEST'S REQUESTS FOR ACCOMMODATIONS.

While the Defendants did not give West precisely the accommodation she requested, they granted her requests for accommodation by offering her solutions that accommodated her needs based on the information she provided.  A reasonable accommodation "enable[s] the employee to do the particular job."  Wilkerson v. Shinseki, 606 F.3d 1256, 1265 (10th Cir. 2010). "[T]he ADA requires an employer to provide a 'reasonable accommodation, not the accommodation [the

---

[West:] No. I requested an accommodation under the ADA.

[Maynes:] Well, let me just try to understand.  What's the difference to you -- If you're granted a temporary, part-time schedule for three months subject to review of the operational needs of the department and your medical information, what's the difference between that and what you call an ADA accommodation?  What's the difference?

[West:] Legal protection for my job.

[Maynes:] Okay. And what do you mean by that?

[West:] With being subject to a review afer three months whoever does the review could just say "Sorry, you do not produce enough, and we will terminate you."

West Depo. at 111:5-23.

employee] would prefer.'" Selenke v. Medical Imaging of Colo., 248 F.3d at 1263 (quoting Rehling

v. City of Chicago, 207 F.3d 1009, 1014 (7th Cir. 2000)).

First, the Defendants granted West a reasonable accommodation in response to her request

for a driving accommodation.  On October 11, 2007, West requested "to drive [her] private vehicle

and to receive mileage reimbursement when required to travel to locations outside of Las Cruces,

NM."  Milage Reimbursement Request at 4.  On April 2, 2008.  West provided supplemental

clarifying information from her medical provider, stating:

> Ms. Ulrike M. West is able to travel long distance in a vehicle which is able to
> provide accommodations for her disabilities.  She also needs to be able to take
> stretch breaks at regular intervals.     Recommendations for reasonable
> accommodations are as follows:
>
>> a) Use of personal vehicle (GMC Suburban -- Regency Conversion), which
>> is equipped with electronically fully adjustable bucket front seats; adjustable
>> distance, heights, angle, backrest, and lumbar support; which provides Ms.
>> West the necessary support for her legs and her spine to reduce the
>> exacerbation of her symptoms. The vehicle also has the correct heights to
>> allow Ms. West to enter and exit the vehicle with the least amount of effort
>> and pain.  Or
>>
>> b) Ensure the availability of a properly equipped State vehicle of the correct
>> heights with electronic adjustability function as described for her personal
>> vehicle under a).  Or
>>
>> c) Provide a comfortable vehicle and a driver for Ms. West for long distance
>> travel.

Additional Clarification at 15.  On April 8, 2008, Juaregui wrote to West, stating:

> Your request was that you be able to drive your private vehicle and receive mileage
> reimbursement when required to travel to locations outside of Las Cruces. . . .  It
> appears as though traveling is sporadic and may only happen once or twice a year.
> Therefore, the accommodation should be handled through your supervisor on a case
> by case basis depending on the situation either by allowing you to take your private
> vehicle or by allowing you to ride with someone to the destination. Both of these
> were recommendations made by your physician.

-74-

Letter from Patricia Juaregui to Ulrike West at 16 (dated April 8, 2008).  In sum, West requested that the Defendants approve reimbursing her for milage for using her personal vehicle.  The clarifying information from her health care provider, however, revealed that West's disability could be accommodated in three different ways: allowing West to drive her personal vehicle, equipping a TRD fleet vehicle to accommodate West's disability, or providing West with a comfortable vehicle and driver.  The Defendants offered West two of these options -- using her vehicle or riding with a driver.  Because she traveled infrequently, the Defendants decided to determine which option to use on a case-by-case basis.  The Defendants, thereby, granted West's request for an accommodation. The Defendants did not give West the precise accommodation she requested, but they gave her one that would allow her to perform her duties based on the information provided by her medical provider.

Second, the Defendants also granted West a reasonable accommodation in response to her request for a part-time schedule.  On July 29, 2008, West requested that her permanent full-time position be converted to a permanent, part-time position, that she be given an additional twenty hours a week of leave without pay, and that she only work five hours a day for five days a week. See Salazar Aff. ¶ 11, at 4.  Her request stated:

> I request the accommodation of additional leave without pay, since my 480 hours under FMLA will be exhausted by latest [sic] September 10, 2008 and maybe sooner if I need to take more than 20 hours of leave without pay per week.  I am in need of at least 20 hours of leave without pay per week for an undetermined length of time, due to my inability to perform my job duties for longer than 20 hours per week.
>
> . . . .
>
> As a reasonable accommodation, I am requesting 20 hours of leave without pay per calendar week immediately following the exhaustion of FMLA leave entitlement.  My best estimate is that I will be able to use FMLA leave through the

beginning of September 2008 if I do not require any extended FMLA leave hours between now and September 10, 2008.

      The length of time that I will need the 20 hours of leave without pay for is undetermined at this time.  I still have medical referrals outstanding to the UNM Neurology clinic, to an orthopedic specialist, and to a psychologist for a neuro psychological evaluation.  In addition, I have applied for and have been accepted for services at the Department of Vocational Rehabilitation in an effort to identify and to rehabilitate me for a profession that can and will accommodate my disabilities.

      I request that the 20 hours per week of leave without pay will be approved until I am rehabilitated for another job or until I resign from this position, whichever event comes first.

Part-Time Schedule Request at 1-2.

After determining that TRD's institutional interests did not support permanently converting West's full-time position into a part-time position, because doing so might mean that TRD would lose that full-time position permanently and other employees would have to absorb the extra work, Salazar wrote West on September 15, 2008, stating:

      Your requested part time schedule does not result in your being able to perform the essential functions of the job and is therefore denied as an accommodation. However, the Department is in the position to be able to offer you a temporary part-time schedule.  You may work part time with four five hour days per week for the next three months. The remaining normally scheduled hours will be coded [leave without pay].  If you choose to accept this schedule, the Department will review your status at the end of three·months to determine if we are able to continue to offer this option.  The determination will be made based on the critical operational needs of the department and information provided by you through your physician regarding your continued need to be on an abbreviated schedule.  Of course, this is not to preclude you from requesting some other schedule prior to that date if your medical condition changes.

Letter from Salazar to West at 12 (dated September 15, 2008).

While the Defendants did not grant West the exact accommodation she requested, they granted her an accommodation that would provide her with the schedule she requested without converting a full-time position into a part-time position.  The Defendants, thereby, offered a

reasonable accommodation that would allow West to perform her job. While "part-time or modified work schedules" are reasonable accommodations under the ADA, 42 U.S.C.A. § 12111(9)(B), the Defendants were not required to permanently change West's full-time position to a part-time position to reasonable accommodate her request, see Lileikis v. SBC Ameritech, Inc., 84 F. App'x 645, 649 (7th Cir. 2003)("Lileikis says she is able to perform the essential functions of her job with an accommodation of part-time work, but part-time work is not a reasonable accommodation for a full-time job." (citing DeVito v. Chicago Park Dist., 270 F.3d 532 (7th Cir. 2001)); Terrell v. USAir, 132 F.3d at 626-27 ("Whether a company will staff itself with part-time workers, full-time workers, or a mix of both is a core management policy with which the ADA was not intended to interfere.").

Thus, West effectively requested twenty hours leave without pay per week. The Defendants granted West's request for twenty hours leave without pay per week, which would allow her to perform her duties based on the information she provided, but without permanently changing her position into a part-time position, protecting TRD's institutional concerns. In Selenke v. Medical Imaging of Colo., the plaintiff argued she experienced an adverse employment action, because the defendant declined to make certain improvements recommended by a consultant. See 248 F.3d at 1262. The Tenth Circuit rejected her argument, finding that "practical concerns about substantial expenditures" justified denying the request, and the defendant made other reasonable accommodations. The Tenth Circuit stated "the ADA requires an employer to provide a "reasonable accommodation, not the accommodation [the employee] would prefer." 248 F.3d at 1263 (quoting Rehling v. City of Chicago, 207 F.3d at 1014).

In response to both requests, the Defendants did not give West precisely the arrangement she asked for, but they provided her with a reasonable accommodation that would allow her to perform

her duties based on the information West provided.  To grant West's request for a reasonable accommodation, the Defendants had to provide her with an accommodation that would permit her to perform her duties, and did not need to give West precisely the accommodation she requested. See Selenke v. Medical Imaging of Colo., 248 F.3d at 1263 (quoting Rehling v. City of Chicago, 207 F.3d at 1014).  In sum, the Court concludes that the Defendants granted West's requests by offering her a reasonable accommodation.

### B.   THE DEFENDANTS' ACTIONS DO NOT RISE TO THE LEVEL OF AN ADVERSE EMPLOYMENT ACTION.

To establish a prima-facie case of retaliation, West must show that the Defendants subjected her to an adverse employment action.  The Defendants contend that West suffered no tangible adverse employment action, because they granted her requests for a reasonable accommodation, and thus West cannot establish an element of a retaliation claim.  West argues that, by reviewing her requests on a case-by-case and temporary basis, the Defendants subjected her to an adverse employment action, and that "the ADA does not permit such onerous requirements or require such hurdles and obstacles, and this conduct by Defendants constitutes substantial evidence of retaliation, deception and disability-based hostility."  Plaintiff's Motion ¶ 50, at 15.  West cites no authority for this proposition.[30]  The Court finds that none of the Defendants' actions rose to the level of a materially adverse employment action.

#### 1.   Reasonable Accommodations Are Not Materially Adverse Employment Actions.

The Defendants did not subject West to an adverse employment action when they granted

---

[30] Indeed, West cites little case law or other legal authority in the her Motion.  In the "Legal Analysis" section, she cites four cases, all relating to her First Amendment claim.  She cites no legal authority for any of her six other claims.

her reasonable accommodations in response to her requests or through Chowning's forgetfulness. The Defendants argue that, although West contends her two requests for an accommodation were denied in retaliation for having filed her disability discrimination charge on December 19, 2007, her request to drive her personal vehicle on work-related travel was granted on a case-by-case basis, and her request to work a part-time schedule was granted on a three-month basis.  The Defendants contend that, by granting her accommodation requests, TRD's actions do not rise to the level of an adverse employment action to satisfy a necessary element of a retaliation claim.  West argues that denial of a request for an accommodation is, in her case, the equivalent of an adverse employment action.

Granting a reasonable accommodation cannot be a materially adverse employment action; being granted a reasonable accommodation would not "dissuade[] a reasonable worker from making or supporting a charge of discrimination."  Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d at 1133 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. at 68)(internal quotation marks omitted).  See Selenke v. Medical Imaging of Colo., 248 F.3d at 1265 ("Our analysis of . . . reasonable accommodation claims disposes of  . . . these allegedly retaliatory [adverse employment] actions.").  Because the Court concludes that the Defendants granted West's requests for  reasonable accommodations, even if not as she requested, it finds that the reasonable accommodations are not materially adverse employment actions.  In Selenke v. Medical Imaging of Colo., the plaintiff argued she experienced an adverse employment action, because the defendant declined to make certain improvements recommended by a consultant.  See 248 F.3d at 1262.  The Tenth Circuit rejected her argument, finding that "practical concerns about substantial expenditures" justified denying the request, and the defendant made other reasonable accommodations.  The Tenth

Circuit stated that "the ADA requires an employer to provide a "reasonable accommodation, not the accommodation [the employee] would prefer."  248 F.3d at 1263 (quoting Rehling v. City of Chicago, 207 F.3d at 1014.).  Similarly, the Defendants offered West reasonable accommodations and cannot be faulted for subjecting West to an adverse employment action as a consequence.

Additionally, granting a request on a case-by-case or temporary basis falls short of the Tenth Circuit's standard for establishing an adverse employment action.  In Anderson v. Clovis Mun. Schs., the Tenth Circuit, in an unpublished opinion, addressed the requirement of a tangible adverse employment action in the context of a disparate-treatment claim where an employee, who has been placed on a growth plan, alleged other harsh treatment and a written reprimand in support of his claim that he suffered a hostile work environment.  Relying on Schuler v. City of Boulder, Anderson argued that the growth plan and formal reprimand rose to the level of an adverse employment action under the law of the Tenth Circuit.  In discussing Anderson's reliance on Schuler v. City of Boulder, the Tenth Circuit stated: "[W]hile adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action.  Otherwise, minor and even trivial employment actions . . . would form the basis of a discrimination suit."  265 F. App'x at 704 (quoting MacKenzie v. City and County of Domier, 414 F.3d at 1279).  See Heno v. Sprint/United Mgnt. Co., 208 F.3d at 857)(explaining that Title VII proscribes only discriminatory conduct that "alters the employee's compensation, terms, conditions, or privileges of employment, or adversely affect his or her status as an employee.")(quotations omitted).  "Only acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits will rise to the level of an adverse employment action."  Robinson v. Cavalry Portfolio

-80-

Serv., LLC, 365 F. App'x at 114)(quoting Haynes v. Level 3 Communs, 456 F.3d at 1218-19). Under this standard, requiring an employee to request mileage reimbursement a few times a year, or a part-time schedule after three months, does not amount to an adverse employment action. Neither requirement would lead a reasonable employee to fail to file or prosecute a discrimination claim.  See Heno v. Sprint/United Mgnt. Co., 208 F.3d at 857.  The Court finds, therefore, that the Defendants' responses to West's requests were not adverse employment actions.

### 2. Delay Without Harm is Not a Materially Adverse Employment Action.

The Defendants' delay in responding to West's requests for accommodation does not amount to an adverse employment action.  West argues "material fact [sic] exist as to whether Defendants unreasonably delayed the processing of both the requests for accommodation without justification." Plaintiff's Response at 13.  Delay without more, however, is not an adverse employment action.  See Tapia v. City of Albuquerque, 170 F. App'x 529, 535 (10th Cir. 2006)(holding an employer's delay transferring an employee out of an allegedly discriminatory working situation did not amount to an adverse employment action); Mohankumar v. Kan. State Univ., 221 F.3d 1352, at *3 (10th Cir. 2000)("[P]laintiff did not suffer any adverse employment action as a result of defendants' . . . delay in hiring her as a post-doctoral fellow."); Amro v. Boeing Co., 232 F.3d 790, 797 (10th Cir. 2000)(holding an employer's delay of several months in transferring an employee did not amount to an adverse employment action).  See also Hook v. Regents of Univ. of Cal., 2010 WL 3529414, at *10 (stating hesitation and requests for additional information do not amount to adverse employment actions).  Furthermore, no harm attended the Defendants' delay, because West missed no work related travel and was never required to work more than her requested schedule.

The Defendants' delay in responding to West's requests did not result in harm to West, and

-81-

delay without harm does not rise to the level of an adverse employment action.  "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. at 67 ("We speak of material adversity because we believe it is important to separate significant from trivial harms.").  The United States District Court of the District of Colorado found, upon reviewing case law, that courts generally do not find that mere delay in responding to a request for a reasonable accommodation amounts to an adverse employment action.  See Barber ex rel. Barber v. Colorado, Dept. of Revenue, No. 05-cv-00807-REB-CBS, 2008 WL 207691, at *1 n.5 (D. Colo. Jan. 24, 2008)(citing Trobia v. Henderson, 315 F. Supp. 2d 322, 337 (W.D.N.Y. 2004)(finding delays in administrative processing of plaintiff's claims for reasonable accommodation did not constitute failure to accommodate by employer), aff'd, 143 F. App'x 374 (2d Cir. 2005); Rennie v. United Parcel Serv., 139 F. Supp. 2d 159, 172 (D. Mass. 2001)(noting, in regard to "interactive process" required in employment situations, that "'[n]othing in the [ADA] regulations or in the cases indicates . . . that an employer must move with maximum speed to complete [the reasonable accommodation] process and preempt any possible concerns"; rather, "the employer is entitled to move at whatever pace he chooses as long as the ultimate problem -- the employee's performance of her duties -- is not truly imminent")(quoting Loulseged v. Akzo Nobel Inc., 178 F.3d 731, 737 (5th Cir. 1999))).

        In Selenke v. Medical Imaging of Colorado, 248 F.3d 1249 (10th Cir. 2001), the Tenth Circuit reviewed cases from other circuits, and found that, in some circumstances, "an employer's delay in providing reasonable accommodation may violate the ADA."  248 F.3d at 1262.  The Tenth Circuit's review of these cases led it to establish four factors for determining whether a delay in providing a reasonable accommodation amounted to an ADA violation: "the length of the delay, the

reasons for the delay, whether the employer has offered any alternative accommodations while evaluating a particular request, and whether the employer has acted in good faith." <u>Selenke v. Med. Imaging of Colo.</u>, 248 F.3d at 1262-63 (citing <u>Terrell v. USAir</u>, 132 F.3d at 628 (affirming grant of summary judgment to an employer on employee's claim that it violated the ADA by failing to provide her with a special keyboard for three months, and reasoning that the plaintiff "had some access" to the keyboard during that time and "was not required to type when she had no access")); <u>Hartsfield v. Miami-Dade County</u>, 90 F. Supp.2d. at 1371-73 (granting summary judgment on employee's claim that ten-month delay in providing special equipment and training violated the ADA, and holding that "[w]here an accommodation is delayed an employer does not violate the ADA, as long as the employee receives some other accommodation or at least does not suffer adverse employment action"); <u>Anderson v. Ross Stores, Inc.</u>, 2000 WL 1585269, at *8 (collecting cases); <u>Powers v. Polygram Holding, Inc.</u>, 40 F. Supp. 2d at 202 (granting employer's motion for summary judgment on employee's claim that a three-week delay in granting a request for reduced hours violated the ADA); <u>Krocka v. Riegler</u>, 958 F. Supp. at 1342 (N.D. Ill.1997)(holding that "an unreasonable delay in implementing a 'reasonable accommodation' can constitute a discriminatory act" and refusing to dismiss a claim that an eight-month delay in assigning an employee to the desired shift constituted a failure to reasonably accommodate)).

The Tenth Circuit applied these factors to the arguments of a plaintiff who suffered from a sinus disorder and alleged, in part, that her employer violated the ADA because it "failed to reasonably accommodate her sinus disorder by failing to make timely modifications in her work environment." <u>Selenke v. Med. Imaging of Colo.</u>, 248 F.3d at 1261.  The plaintiff based her argument on three delays:

> [E]ven though she complained about a lack of ventilation in the 19th Street darkroom
> in the fall of 1995, [the employer, MIC,] did not insert a vent until February 1996.
> She also cites delays in making improvements at the Jackson Street office, observing
> that even though MIC moved to that office in September 1996, it was not until late
> November of that year that MIC completed the repairs to provide adequate
> ventilation.

Id.  The Tenth Circuit held that the defendant was entitled to summary judgment on the plaintiff's claim for failure to reasonably accommodate her.  Regarding delays improving ventilation in the 19th Street darkroom, the Tenth Circuit found that the defendant reasonably relied on a contractor's mistaken statement that ventilation existed, retained a consultant to evaluate the situation and followed the consultant's recommendation by installing a vent, and provided Ms. Selenke with another accommodation by providing her with a respirator.  See id.  The Tenth Circuit also found no indication that the defendant refused the plaintiff any requests for leave during the time.  See id. The Tenth Circuit found similar factors justified the delayed improvements at the Jackson Street office.  See id.  Turning to the plaintiff's ADA retaliation claim, the Tenth Circuit held that, where the delay is reasonable under these factors, it does not amount to an adverse employment action. See id.

Applying the four factors from Selenke v. Medical Imaging of Colo., the Court finds that the Defendants' delays in responding to West's requests do not amount to a failure-to-accommodate or, thereby, an adverse employment action.  Regarding West's milage reimbursement request, while TRD did not grant West a reasonable accommodation in response to her request until April 8, 2008 -- a delay of approximately six month -- the delay resulted, at least in part, from West's healthcare provider's failure to respond to the Defendants' repeated requests for additional clarifying information.

TRD's six month delay was justified and in good faith.  On October 11, 2007, West

submitted her request "to drive [her] private vehicle and to receive mileage reimbursement when required to travel to locations outside of Las Cruces, NM." TRD Reasonable Accommodation Request Form at 4 (dated October 11, 2007). Shortly thereafter, on October 18, 2007, TRD sent a letter to Dr. Gomez, asking her to complete an ADA Physician's Statement form. See, e.g., Letter from Lynette Trujillo to Teresa Gomez at 6 (dated October 18, 2007). Dr. Gomez did not respond until January 31, 2008, when she returned the ADA Physician's Statement with facially contradictory information. See Juaregui Aff. ¶ 4, at 2; West Depo. at 176:6-8. One day later, on February 1, 2008, TRD wrote to Dr. Gomez, copying West, seeking clarification of the facially contradictory information. See Letter from Patricia Jauregui to Teresa Gomez at 12 (dated February 1, 2008). Because neither Dr. Gomez nor West responded, TRD contacted West on March 10, 2008, and informed her that her physician had not yet responded and that TRD would attempt to contact her doctor's office again. See Juaregui Aff. ¶ 7, at 2. TRD left three separate messages for Dr. Gomez on March 10, March 14, and March 25, 2008. See Juaregui Aff. ¶ 7, at 2. TRD then sent West a letter on March 27, 2008, asking her to provide supplemental clarifying information regarding her request for an accommodation by April 8, 2008. See Letter from Patricia Juaregui to Ulrike West at 13 (dated March 27, 2008); Juaregui Aff. ¶ 8, at 2. On April 2, 2008 West provided supplemental clarifying information from her medical provider. See, e.g., Additional Clarification. In sum, it was through no fault of the Defendants that the information they sought from West's health care provider was not ascertained until April 2, 2008. Six days after receiving the information, on April 8, 2008, Juaregui advised West that she would be permitted to use her personal vehicle on a case-by-case basis, acknowledging that she did not perform much work-related travel in her Auditor Reviewer position, and that she may be able to ride with another driver. See, e.g.,

Letter from Patricia Juaregui to Ulrike West at 16 (dated April 8, 2008).

West suffered no harm from the delay, because she was not required to travel for work while awaiting the Defendants' response.  <u>See</u> Defendants' Answers to Plaintiff's First Set of Interrogatories and Requests for Production No. 3, at 4; Salazar Aff. ¶ 10, at 4.  After TRD informed West that it would review her requests on a case-by-case basis, West never had occasion to travel for work before leaving TRD.  <u>See</u> Defendant's Reply at 3.  Because the six-month delay was in good faith, not the Defendants' fault, and occasioned no harm to West, the Court finds that the Defendants' delay in responding to West's request for mileage reimbursement did not amount to a failure-to-accommodate, and therefore did not amount to a materially adverse employment action. <u>See</u> <u>Selenke v. Med. Imaging of Colo.</u>, 248 F.3d at 1262-63 (citing <u>Terrell v. USAir</u>, 132 F.3d at 627).  <u>Cf.</u> <u>Bundy v. Chaves County Bd. of Com'rs.</u>, 215 F. App'x 759, 762 (10th Cir. 2007)("[B]y failing to respond to the repeated requests for [medical] documentation concerning his ability to return to work, [plaintiff] never triggered the Board's duty to consider [a reasonable accommodation].").

Regarding West's request for a part-time schedule, the Defendants on September 15, 2008, offered West a part-time schedule in response to her July 29, 2008 request.  In her request, West indicated that she anticipated needing an additional twenty hours of leave without pay per week by about September 10, 2008.  The parties present no evidence about the cause of the delay.  West's request was accommodated during the pendency of the decision, because she was never required to work more than the part-time schedule she requested as a result of the delay.  No evidence supports the assertion the decision was made in bad faith.  Within three weeks of being notified of Salazar's decision, West's treating physician determined that she could no longer hold gainful employment.

-86-

See Physician Form (dated October 6, 2008).  West left work entirely and never returned.  See Defendants' Motion ¶ 11, at 6; Plaintiff's Response ¶ 11, at 7.  Because the Defendants responded to West's request shortly after she indicated she required a modified schedule, and she was accommodated with a modified schedule in the interim, the Court concludes that the Defendants' delay in responding to West's request for a part-time schedule did not amount to a failure-to-accommodate, and therefore did not amount to a materially adverse employment action.  See Selenke v. Med. Imaging of Colo., 248 F.3d at 1262-63 (citing Terrell v. USAir, 132 F.3d at 627). Cf. Rennie v. United Parcel Serv., 139 F. Supp. 2d at 172 ("'[N]othing in the [ADA] regulations or in the cases indicates . . . that an employer must move with maximum speed to complete [the reasonable accommodation] process and preempt any possible concerns"; rather, "the employer is entitled to move at whatever pace he chooses as long as the ultimate problem -- the employee's performance of her duties -- is not truly imminent")(quoting Loulseged v. Akzo Nobel Inc., 178 F.3d at 737)); Powers v. Polygram Holding, Inc., 40 F. Supp. 2d at 202 (granting employer's motion for summary judgment on employee's claim that a three-week delay in granting a request for reduced hours violated the ADA).

### 3.   Chownings's Forgetfulness does not Rise to the Level of an Adverse Employment Action.

West also complains of her supervisor forgetting to approve West's request for leave, forward information to West, and to call West for meetings.  The Court finds that these actions do not amount to an adverse employment action.  "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. at 68.  "[P]etty slights, minor annoyances, and simple lack of good manners" do not

amount to adverse employment actions.  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. at 68

(citing 2 EEOC 1998 Manual § 8, p. 8-13).  "Retaliatory conduct other than discharge or refusal to

rehire is . . . proscribed by Title VII only if it alters the employee's 'compensation, terms, conditions,

or privileges of employment,' or 'adversely affect[s] his [or her] status as an employee.'"  Heno v.

Sprint/United Mgnt. Co., 208 F.3d at 857-58 (citations omitted)("Ms. Heno was working in the same

job, for the same pay, with the same benefits[;] [m]oving her desk, monitoring her calls, being

'chilly' towards her, and suggesting that she might do better in a different department simply did

not affect Ms. Heno's employment status.").  Chowning's forgetting to approve West's request for

leave, forward information to West, and to call West for meetings, even if feigned, would not have

"dissuaded a reasonable worker from making or supporting a charge of discrimination."  Reinhardt

v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d at 1133 (quoting Burlington N. & Santa Fe Ry. Co.

v. White, 548 U.S. at 68)(internal quotation marks omitted).  West has not shown, moreover, that

any harm attended Chowning's forgetfulness.  See Burlington N. & Santa Fe Ry. Co. v. White, 548

U.S. at 67 ("The antiretaliation provision protects an individual not from all retaliation, but from

retaliation that produces an injury or harm.").  The Court finds that West's supervisor's forgetfulness

does not amount to an adverse employment action.

**III.     THE COURT WILL DISMISS WEST'S CLAIM FOR VIOLATION OF HER FIRST-AMENDMENT RIGHTS.**

        In addition to failing to show the Defendants subjected her to a materially adverse

employment action, as required to establish a First-Amendment retaliation claim, West's First-

Amendment claim fails because her speech related only to her personal grievance, and did not

involve a matter of public concern.  Furthermore, Salazar is entitled to qualified immunity.

        The Defendants argue that West did not engage in speech about matters that are of public

concern.  The Defendants assert that West did not speak out on behalf of others or challenge TRD's policies relating to disability accommodation other than as related to her two personal requests for accommodation, which were speech about only her personal working conditions.  Salazar is entitled to qualified immunity, the Defendants further argue, because West has not shown that he was deliberately indifferent to her clearly established rights.

West argues that she is entitled to summary judgment, because her "statements and complaints regarding possible disability discrimination were made in her capacity as a private citizen to individuals and agencies both within and outside of her chain of command and were not made as part of her official or unofficial job duties."  Plaintiff's Motion ¶ 46, at 12.  In her Complaint, West's argument states: "Here, Plaintiff spoke about her being discriminated against by the untimely provision of reasonable accommodations.  Clearly her comments about discrimination did not address her official duties but rather a comment on a violation of important civil rights (a matter of great public concern) by the conduct of others."  Plaintiff's Motion at 13.

The Court finds that West did not speak about a matter of public concern and that Salazar is entitled to qualified immunity.  Under Garcetti v. Ceballos and its progeny, West must show that the substance of the speech on which she bases her First-Amendment retaliation claim involves something that is not part of her official duties and that is a matter of public concern, and is not merely a complaint involving her own employment.  See Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d 1192, 1205 (10th Cir. 2007)("In determining whether speech pertains to a matter of public concern, the court may consider 'the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest.'" (quoting Lighton v. Univ. of Utah, 209 F.3d at 1224)).  The Court finds

that, even if West's First-Amendment retaliation claim did not fail for want of an adverse employment action, she cannot show that she spoke other than as part of her official duties about her own conditions of employment. Because West has not shown that her First-Amendment rights were violated, she cannot show that Salazar was willfully indifferent to a clear violation of her rights. Consequently, the Court finds that West's First-Amendment retaliation claim is without a sound basis in the law and in the facts of the case.

### A.    WEST HAS NOT SHOWN THAT HER SPEECH INVOLVED A MATTER OF PUBLIC CONCERN.

West's complaints about the Defendants' responses to her requests for accommodations are not matters of public concern. West argues her speech regarding her requests for accommodations is "free expression of opposition to discrimination." Complaint ¶ 38, at 7. She argues that, because she "spoke about her being discriminated against by the untimely provision of reasonable accommodations. . . . [her speech was a] comment on a violation of important civil rights (a matter of great public concern) by the conduct of others." Plaintiff's Motion ¶ 46, at 13. West appears to argue that all disability discrimination claims are per se matters of public concern: "Disability-based discrimination in the workplace is illegal and is presumptively a matter of great public concern." Plaintiff's Response ¶ 3, at 3. West offers no legal authority in support of her broad assertion.

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick v. Myers, 461 U.S. 138, 147-48 (1983). "Statements revealing official impropriety usually involve matters of public concern." Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d at 1205. Conversely, speech that solely airs "grievances of a purely personal nature" does not involve matters of a public concern. Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d at 1205. The Tenth

Circuit in Brammer-Hoelter v. Twin Peaks Charter Academy explained: "[W]e have held that the following are not matters of public concern: speech regarding grievances about internal departmental affairs, disputes over the term of employment, and workplace frustration."  492 F.3d at 1205.  "In determining whether speech pertains to a matter of public concern, the court may consider 'the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest.'"  Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d at 1205 (quoting Lighton v. Univ. of Utah, 209 F.3d at 1224).

Grievances that are purely personal in nature generally do not involve a matter of public concern.  See Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d. at 1205.  Similarly, speech aggrieving department affairs are not matters of public concern and are, therefore, not the subject of constitutional protection.  See id. (citing Hom v. Squire, 84 F .3d at 974).

West "cannot establish a First Amendment claim for retaliation based on filing an EEOC charge."  Grabow v. Independent Sch. Dist. No. I-008, 86 F.3d 1166, at *4 (finding the plaintiffs' EEOC charge "did not relate to a matter of political, social, or other concern to the community, but rather involved only 'matters of internal departmental affairs and personal interest.'" (quoting Hom v. Squire, 81 F.3d at 974)).  In David v. City and County of Denver, 101 F.3d 1344 (10th Cir. 1996), the Tenth Circuit affirmed the district court's grant of summary judgment against a police officer who was suspended for tardiness after initiating sexual harassment complaints, including EEOC complaints.  The Tenth Circuit found that the EEOC complaints did not address matters of pubic concern:

> Her allegations focus on the conditions of her own employment, and in neither the
> EEOC complaints nor the letter to the City Attorney does Officer David allege that
> other employees have been subjected to harassment or retaliation or that the
> harassment and retaliation has interfered with the Department's performance of its

governmental responsibilities. Therefore, Officer David's statements do not involve matters of public concern under the <u>Connick</u> standard.

101 F.3d at 1356.

Similarly, West's complaints about the Defendants' handling of her requests for accommodation were not matters of public concern, because she "focus[ed] on the conditions of her own employment." 101 F.3d at 1356. Consequently, West's speech does not enjoy First-Amendment protections. By the same measure, West's electronic mail to Beresford asking for clarification on the proper procedure for requesting an accommodation and expressing her frustration over the Defendants response to her request for furniture also deals only with her personal concerns, <u>see</u> Electronic Transmission from Ulrike West to Mary Keener Beresford (dated October 2, 2007), and "focus on the conditions of her own employment," <u>David v. City and County of Denver</u>, 101 F.3d at 1356. Neither her EEOC Charge nor her electronic mail "allege that other employees have been subjected to harassment or retaliation or that the harassment and retaliation has interfered with the Department's performance of its governmental responsibilities." 101 F.3d at 1356. As such, West's speech did not relate to a matter of political, social, or other concern to the community, but rather involved only "matters of internal departmental affairs and personal interest." <u>Hom v. Squire</u>, 81 F.3d at 974. The Court finds, therefore, that West did not speak about a matter of public concern.

### B.      SALAZAR IS ENTITLED TO QUALIFY IMMUNITY FROM SUIT UNDER 42 U.S.C. § 1983.

Salazar is entitled to qualified immunity, because he was not indifferent to the violation of West's clearly established rights. The defense of qualified immunity "protects a government official from personal liability and the burden of having to go to trial unless he violated clearly established

statutory or constitutional rights of which a reasonable person would have known."
Brammer-Hoelter v. Twin Peaks Charter Acad., 602 F.3d at 1184.  To defeat the defense of qualified
immunity, West must show that Salazar's actions (i) "violated a constitutional or statutory right" and
(i) the right the defendants violated was "clearly established at the time of the conduct at issue."  602
F.3d at 1184 (citations and quotations omitted).

West has not shown that the Defendants violated her rights, much less her clearly established
First-Amendment rights.  "When a defendant asserts qualified immunity in a motion for summary
judgment, the burden shifts to the plaintiff who must satisfy a heavy two-part burden.  The plaintiff
must show the defendant's conduct violated a constitutional right, and the right was clearly
established at the time of the defendant's conduct."  Chavez-Rodriguez v. City of Santa Fe, 596 F.3d
708, 713 (10th Cir. 2010)(citing Pearson v. Callahan, 129 S. Court. 808, 815-16 (2009);
Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d at 1202).

Moreover, a split exists among the courts of appeals, and the Tenth Circuit has not
definitively weighed in on the matter, but the Court's reasoning in Brammer-Hoelter v. Twin Peaks
Charter Academy, David v. City and County of Denver, and Grabow v. Independent School District.
No. I-008 suggests the Tenth Circuit would join the courts of appeals that find an EEOC charge,
without more,  is not normally protected.  As a result, even if Salazar retaliated against West based
on her EEOC complaints, such retaliation does not violate clearly established First Amendment
rights, and qualified immunity protects Salazar from West's First-Amendment claim.  See Badia v.
City of Miami, 133 F.3d 1443, 1446 (11th Cir. 1998)(finding a defendant enjoyed qualified
immunity from plaintiffs First-Amendment retaliation claim because the United States Court of
Appeals for the Eleventh Circuit had not determined whether an EEOC complaint was protected

speech).

## IV.     THE COURT REMANDS WEST'S STATE-LAW CLAIMS NEW MEXICO STATE COURT.

The Defendants are entitled, therefore, to summary judgment on all federal claims. Having dismissed all claims on which the Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c). West originally brought her claims in state court. The Court therefore remands all remaining claims -- all of which sound in state-law -- to state court. See McWilliams v. Jefferson County, 463 F.3d 1113, 1118 (10th Cir. 2006)("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims" (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7, 357 (1988)). "[A] district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate." Carnegie-Mellon Univ. v. Cohill, 484 U.S. at 357.[31]

IT IS ORDERED that the Defendants' Motion for Summary Judgment, filed March 26, 2010 (Doc. 54), is granted on all federal claims and all federal claims are dismissed with prejudice. All remaining state-law claims are remanded to the Third Judicial District Court, Dona Ana County, State of New Mexico.

---

[31] At the August 30, 2010 hearing, both sides agreed that the Court may remand the case to New Mexico state court. See Tr. at 21:14-22:2 (Court, Maynes); id. 50:2-7 (Court, Gayle-Smith). Additionally, Mr. Gayle-Smith stated that he would prefer to have the Court remand the case to state court. Tr. at 50:3-7 (Court, Gayle-Smith).

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Paul Michael Gayle-Smith
Law Office of Paul M. Gayle-Smith
Las Cruces, New Mexico

      *Attorney for the Plaintiff*


Paula Grace Maynes
James R. Wood
Miller & Stratvert P.A.
Santa Fe, New Mexico

      *Attorneys for the Defendants*